# UNITED STATES v. DONOVAN ET AL.

No. 75–212.   Argued October 13, 1976—Decided January 18, 1977

*Deputy Solicitor General Frey* argued the cause for the United States. On the brief were *Solicitor General Bork, Assistant Attorney General Thornburgh, Harriet S. Shapiro, Sidney M. Glazer,* and *Marc Philip Richman.*

*Bernard A. Berkman* argued the cause for respondents Merlo et al. With him on the brief was *Joshua J. Kancel-*

▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉

*baum.* *Carmen A. Policy* argued the cause and filed a brief for respondent Buzzacco.

MR. JUSTICE POWELL delivered the opinion of the Court.

This case presents issues concerning the construction of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. §§ 2510–2520. Specifically, we must decide whether 18 U. S. C. § 2518 (1)(b)(iv), which requires the Government to include in its wiretap applications "the identity of the person, if known, committing the offense and whose communications are to be intercepted," is satisfied when the Government identifies only the "principal targets" of the intercept. Second, we must decide whether the Government has a statutory responsibility to inform the issuing judge of the identities of persons whose conversations were overheard in the course of the interception, thus enabling him to decide whether they should be served with notice of the interception pursuant to 18 U. S. C. § 2518 (8)(d). And finally, we must determine whether failure to comply fully with these statutory provisions requires suppression of evidence under 18 U. S. C. § 2518 (10)(a).

I

On November 28, 1972, a special agent of the Federal Bureau of Investigation applied to the United States District Court for the Northern District of Ohio for an order authorizing a wiretap interception in accordance with Title III.[1] The application requested authorization to intercept

---

[1] The wiretap application procedure is set forth at 18 U. S. C. § 2518 (1), which provides:

"(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state

gambling-related communications over two telephones at one address in North Olmstead, Ohio, and two other telephones at a home in Canton, Ohio. The accompanying affidavit recited that the telephones were being used by Albert Kotoch, Joseph Spaganlo, and George Florea' to conduct an illegal gambling business, and that in conducting that business they

---

the applicant's authority to make such application. Each application shall include the following information:

"(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application;

"(b) a full and complete statement of the facts and circumstances relied upon by the applicant, to justify his belief that an order should be issued, including (i) details as to the particular offense that has been, is being, or is about to be committed, (ii) a particular description of the nature and location of the facilities from which or the place where the communication is to be intercepted, (iii) a particular description of the type of communications sought to be intercepted, (iv) the identity of the person, if known, committing the offense and whose communications are to be intercepted;

"(c) a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous;

"(d) a statement of the period of time for which the interception is required to be maintained. If the nature of the investigation is such that the authorization for interception should not automatically terminate when the described type of communication has been first obtained, a particular description of facts establishing probable cause to believe that additional communications of the same type will occur thereafter;

"(e) a full and complete statement of the facts concerning all previous applications known to the individual authorizing and making the application, made to any judge for authorization to intercept, or for approval of interceptions of, wire or oral communications involving any of the same persons, facilities or places specified in the application, and the action taken by the judge on each such application; and

"(f) where the application is for the extension of an order, a statement setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results."

The issuing judge is free to require the applicant to furnish additional information. 18 U. S. C. § 2518 (2).

would place calls to and receive calls from various persons, three of whom were also named in the wiretap application.[2] The affiant also stated that the Government's informants would refuse to testify against the persons named in the application, that telephone records alone would be insufficient to support a gambling conviction, and that normal investigative techniques were unlikely to be fruitful. Pursuant to the Government's request, the District Court authorized for a period of 15 days the interception of gambling-related wire communications of Kotoch, Spaganlo, Florea, three named individuals other than the respondents, and "others, as yet unknown," to and from the four listed telephones.[3]

---

[2] The affidavit set forth extensive information indicating that the named individuals were conducting a gambling operation. This information was derived from physical surveillance by agents of the FBI, an examination of telephone company toll records, and the personal observations of six informants, whose past reliability also was detailed in the affidavit.

[3] The District Court's order was issued pursuant to 18 U. S. C. §§ 2518 (3), (4), which provide in pertinent part:

"(3) Upon such application the judge may enter an ex parte order, as requested or as modified, authorizing or approving interception of wire or oral communications within the territorial jurisdiction of the court in which the judge is sitting, if the judge determines on the basis of the facts submitted by the applicant that—

"(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

"(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

"(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

"(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person.

During the course of the wiretap, the Government learned that respondents Donovan, Robbins, and Buzzacco were discussing illegal gambling activities with the named subjects. On December 26, 1972, the Government applied for an extension of the initial intercept order.[4] This time it sought authorization to intercept gambling-related conversations of Kotoch, Spaganlo, Florea, two other named individuals, and "others as yet unknown," but it did not identify respondents Donovan, Buzzacco, and Robbins in this second application.[5]

"(4) Each order authorizing or approving the interception of any wire or oral communication shall specify—

"(a) the identity of the person, if known, whose communications are to be intercepted;

"(b) the nature and location of the communications facilities as to which, or the place where, authority to intercept is granted;

"(c) a particular description of the type of communication sought to be intercepted, and a statement of the particular offense to which it relates;

"(d) the identity of the agency authorized to intercept the communications, and of the person authorizing the application; and

"(e) the period of time during which such interception is authorized, including a statement as to whether or not the interception shall automatically terminate when the described communication has been first obtained."

[4] In addition to the December 26 application requesting an extension of the initial intercept order, the Government also filed on that date a separate application seeking authorization to monitor a third telephone discovered at the same North Olmstead address. Both applications were accompanied by another affidavit setting forth the results of the initial monitoring, the manner in which the third telephone was discovered, the facts indicating that the newly discovered telephone was being used to conduct a gambling business, and reasons why continued interception was necessary. A copy of the affidavit filed on November 28 was also attached to the December 26 applications. For the sake of clarity, the two applications filed on December 26 will be treated as a single application.

[5] The United States conceded in the Court of Appeals that respondents Donovan and Robbins were "known" within the meaning of the statute at the time of the December 26 application, but challenged as

The District Court again authorized interception of gambling-related conversations for a maximum of 15 days.

On February 21, 1973, the Government submitted to the District Court a proposed order giving notice of the interceptions to 37 persons, a group which the Government apparently thought included all individuals who could be identified as having discussed gambling over the monitored telephones.[6] The District Court signed the proposed order, and an inventory notice was served on the listed persons, including respondents Donovan, Buzzacco, and Robbins. On September 11, 1973, after the Government submitted the names of two additional persons whose identities allegedly had been omitted inadvertently from the initial list, the District Court entered an amended order giving notice to those individuals. As a result of what the Government labels "administrative oversight," respondents Merlo and Lauer were not included in either list of names and were never served with inventory notice.[7]

---

clearly erroneous the District Court's finding that respondent Buzzacco was "known" at that time. The Court of Appeals upheld the District Court's finding, and the United States has not sought review of that disposition. Thus, for our purposes, all three respondents were "known" on December 26.

[6] An inventory notice *must* be served within a designated period of time upon "the persons named in the order or the application." 18 U. S. C. § 2518 (8) (d). The inventory must give notice of the entry of the intercept order or application, state the disposition of the application, and indicate whether communications were or were not intercepted. *Ibid.* Upon the filing of a motion, the judge has discretion to make available the intercepted communications, the applications, and the orders. *Ibid.*

Title III also authorizes the District Court to cause an inventory notice to be served on "other parties to intercepted communications" if the judge determines that such notice is in the interest of justice. *Ibid.* Those other parties may also be given access to the intercepted communications, the applications, and the orders. *Ibid.*

[7] Although respondents Merlo and Lauer were not served with inventory notice pursuant to § 2518 (8) (d), the intercept orders, applications,

On November 1, 1973, an indictment was returned in the United States District Court for the Northern District of Ohio charging Kotoch, Spaganlo, the five respondents, and 10 other individuals with conspiracy to conduct and conducting a gambling business in violation of 18 U. S. C. §§ 371 and 1955. The five respondents filed motions to suppress evidence derived from the wire interception. After an evidentiary hearing on the motions, the District Court suppressed as to respondents Donovan, Robbins, and Buzzacco all evidence derived from the December 26 intercept order on the ground that failure to identify them by name in the application and order of that date violated 18 U. S. C. §§ 2518 (1)(b)(iv) and 2518 (4)(a). With respect to Merlo and Lauer, who were not known to the Government until after the December 26 application, the District Court suppressed all evidence derived from both intercept orders on the ground that they had not been served with inventory notice.

The Court of Appeals for the Sixth Circuit affirmed. 513 F. 2d 337 (1975).[8] On the identification issue, the court held that the wiretap application must identify every person whose conversations relating to the subject criminal activity the Government has probable cause to believe it will intercept. Agreeing with the District Court that at the time of the December 26 application the Government had probable cause to believe that it would overhear Donovan, Robbins, and Buzzacco "committing the offense," the Court of Appeals affirmed the suppression of evidence derived from

---

and related papers were made available to all the defendants, including Merlo and Lauer, on November 26, 1973. Thus, the introduction into evidence at trial of the contents of the intercepted conversations and evidence derived therefrom would not be prohibited by 18 U. S. C. § 2518 (9).

[8] The Government filed its appeal from the District Court's order suppressing evidence under 18 U. S. C. § 3731, and there has been no trial on the charges with respect to the respondents.

the December 26 order. On the notice question, it held that the Government has an implied statutory duty to inform the issuing judge of the identities of the parties whose conversations were overheard so that he can determine whether discretionary inventory notice should be required.[9] Because the Government had failed to perform this duty with respect to Merlo and Lauer, the Court of Appeals affirmed the District Court's order suppressing evidence derived from both intercept orders. The court found it unnecessary to determine whether the failure to identify respondents Donovan, Robbins, and Buzzacco in the December 26 application and to name respondents Merlo and Lauer in the proposed inventory notice orders was inadvertent or purposeful, since the mere fact of omission was sufficient to require suppression under 18 U. S. C. § 2518 (10)(a).[10]

We granted certiorari to resolve these issues, which concern the construction of a major federal statute, 424 U. S. 907, and now reverse.

## II

The United States contends that § 2518 (1)(b)(iv) requires that a wiretap application identify only the principal target of the interception, and that § 2518 (8)(d) does not require the Government to provide the issuing judge with a list of all identifiable persons who were overheard in the

---

[9] See n. 6, *supra.*

[10] Title 18 U. S. C. § 2518 (10)(a) provides in pertinent part:

"(10)(a) Any aggrieved person in any trial, hearing, or proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, a State, or a political subdivision thereof, may move to suppress the contents of any intercepted wire or oral communication, or evidence derived therefrom, on the grounds that—

"(i) the communication was unlawfully intercepted;

"(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or

"(iii) the interception was not made in conformity with the order of authorization or approval."

course of an authorized interception. We think neither contention is sound.

## A

We turn first to the identification requirements of § 2518 (1)(b)(iv). That provision requires a wiretap application to specify "the identity of the person, if known, committing the offense and whose communications are to be intercepted." In construing that language, this Court already has ruled that the Government is not required to identify an individual in the application unless it has probable cause to believe (i) that the individual is engaged in the criminal activity under investigation and (ii) that the individual's conversations will be intercepted over the target telephone. *United States* v. *Kahn,* 415 U. S. 143 (1974). The question at issue here is whether the Government is required to name *all* such individuals.[11]

---

[11] Every Court of Appeals that has considered the issue has concluded that an individual whose conversations probably will be intercepted by a wiretap must be identified in the wiretap application if the law enforcement authorities have probable cause to believe the individual is committing the offense for which the wiretap is sought. *United States* v. *Chiarizio,* 525 F. 2d 289, 292 (CA2 1975); *United States* v. *Bernstein,* 509 F. 2d 996 (CA4 1975), cert. pending, No. 74–1486; *United States* v. *Doolittle,* 507 F. 2d 1368 (CA5), aff'd en banc, 518 F. 2d 500 (1975), cert. pending, Nos. 75–500, 75–509, 75–513; *United States* v. *Civella,* 533 F. 2d 1395 (CA8 1976), cert. pending, Nos. 75–1813, 76–169; *United States* v. *Russo,* 527 F. 2d 1051, 1056 (CA10 1975), cert. denied, 426 U. S. 906 (1976). See also *United States* v. *Moore,* 168 U. S. App. D. C. 227, 235–236, 513 F. 2d 485, 493–494 (1975) (interpreting D. C. Code § 23–547 (a)(2)(D), which is almost identical to the provision at issue here).

A number of these courts have concluded, and respondents Donovan, Robbins, and Buzzacco argue, that our decision in *United States* v. *Kahn,* 415 U. S. 143 (1974), resolved this identification issue. See *United States* v. *Chiarizio, supra; United States* v. *Moore, supra.* Although there is language in *Kahn* suggesting that wiretap applications must identify all such individuals, the identification question presented here was not before us in *Kahn.* The question in that case was whether a wiretap application had to identify a known user of the target telephone whose com-

The United States argues that the most reasonable interpretation of the plain language of the statute is that the application must identify only the principal target of the investigation, who "will almost always be the individual whose phone is to be monitored." [12]  Brief for United States 18.  Under this interpretation, if the Government has reason to believe that an individual will use the target telephone to place or receive calls, and the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation, the individual qualifies as a principal target and must be named in the wiretap application.  On the other hand, an individual who uses a different telephone to place calls to or receive calls from the target telephone is not a principal target even if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation.  In other words, whether one is a principal target of the investigation depends on whether one operates the target telephone to place or receive calls.[13]

Whatever the merits of such a statutory scheme, we find little support for it in the language and structure of Title III or in the legislative history.  The statutory language itself refers only to "the person, if known, committing the

---

plicity in the criminal activity under investigation was not known at the time of the application.  *Kahn* is a relevant, though not controlling, precedent.

[12] The United States does not suggest that regardless of the factual circumstances a wiretap application must identify only a single individual. To the contrary, it concedes that if two or more persons are using the target telephone "equally" to commit the offense, and thus are "equally" targets of the investigation, "all must be named."  Brief for United States 18 n. 13.

[13] Counsel for the United States explained this position succinctly at oral argument: "The critical distinction . . . is [one] between the users of the telephone that is being monitored on the one hand, and all other persons throughout the world who may converse from unmonitored phones on the other hand."  Tr. of Oral Arg. 13.

offense and whose communications are to be intercepted." That description is as applicable to a suspect placing calls to the target telephone as it is to a suspect placing calls from that telephone. It is true, as the United States suggests, that when read in the context of the other subdivisions of § 2518 (1)(b), an argument can be made that Congress focused in subdivision (iv) on the primary user of the target telephone. But it is also clear from other sections of the statute that Congress expected that wiretap applications would name more than one individual. For example, Title III requires that inventory notice be served upon "the *persons* named in the order or the application." 18 U. S. C. § 2518 (8)(d) (emphasis added). And § 2518 (1)(e) requires that an intercept application disclose all previous intercept applications "involving *any of the same persons* . . . specified in the application" (emphasis added). It may well be that Congress anticipated that a given application would cover more than one telephone or that several suspects would use one telephone, and that an application for those reasons alone would require identification of more than one individual. But nothing on the face of the statute suggests that Congress intended to remove from the identification requirement those suspects whose intercepted communications originated on a telephone other than that listed in the wiretap application.[14]

---

[14] Indeed, the contrary conclusion is suggested by the fact that identification of an individual in an application for an intercept order triggers other statutory provisions. First, § 2518 (1)(e) requires an intercept application to disclose all previous applications "involving any of the same persons . . . specified in the application." To the extent that Congress thought it necessary to provide the issuing judge with such information, there is no indication of congressional intent to require provision of such information only if a suspect operated from one end of a telephone line. Second, § 2518 (8)(d) mandates that an inventory notice be served upon "the persons named in the order or the application." As with § 2518 (1)(e), the congressional purpose would

Nor can we find support in the legislative history for the "principal target" interpretation. Title III originated as a combination of S. 675, the Federal Wire Interception Act, which was introduced by Senator McClellan several months prior to this Court's decision in *Berger* v. *New York,* 388 U. S. 41 (1967), and S. 2050, the Electronic Surveillance Control Act of 1967, introduced by Senator Hruska a few days after the *Berger* decision. S. Rep. No. 1097, 90th Cong., 2d Sess., 66 (1968). Both bills required that wiretap applications include a full and complete statement of the facts and circumstances relied upon by the applicant and specification of the nature and location of the communication facilities involved. Although neither bill contained an express identification requirement such as that at issue here, both bills required the application to include a "full and complete statement of the facts concerning all previous applications . . . *involving any person named in the application* as committing, having committed, or being about to commit an offense." Hearings Before the Subcommittee on Criminal Laws and Procedures of the Senate Committee on the Judiciary on Controlling-Crime Through More Effective Law Enforcement, 90th Cong.; 1st Sess., 77, § 8 (a)(3), and 1006, § 2518 (4)(a) (1967) (emphasis added). Thus, even at this early stage, it was recognized that an application could identify several individuals, and there is no indication that the identification would be limited to principal targets.

S. 917 combined the major provisions of S. 675 and S. 2050 and eventually was enacted. While it was pending before the Senate Judiciary Committee, this Court decided *Katz* v. *United States,* 389 U. S. 347 (1967). S. 917 was then redrafted to conform to *Katz* as well as *Berger,* and the identification provision was added at that time. The Senate Report states that the requirements set forth in the vari-

---

not be served by limiting that notice on the basis of the telephone from which one speaks.

ous subdivisions of § 2518 (1)(b), including the identification requirement at issue here, were intended to "reflect . . . the constitutional command of particularization." S. Rep. No. 1097, *supra,* at 101, citing *Berger* v. *New York, supra,* at 58–60, and *Katz* v. *United States, supra,* at 354–356. The United States now contends that although it may be that Congress read *Berger* and *Katz* to require, as a constitutional matter, that the subject of the surveillance be named if known, Congress would hardly have read those cases as requiring the naming of all parties likely to be overheard.[15] Brief for United States 25–26. But to the extent that Congress thought it was meeting the constitutional commands of particularization established in *Berger* and *Katz,* Congress may have read those cases as mandating a broad identification requirement. The statute that we confronted in *Berger* required identification of "the person or persons" whose communications were to be overheard. 388 U. S., at 59. And we expressly noted that that provision "[did] no more than identify the person whose constitutionally protected area is to be invaded . . . ." *Ibid.* Given the statute at issue in *Berger* and our comment upon it, Congress may have concluded that the Constitution required the naming, in a wiretap application, of all suspects rather than just the primary user.[16]

---

[15] At the time of the enactment of Title III, Congress did not have before it the view we expressed on this issue in *United States* v. *Kahn,* 415 U. S., at 155 n. 15. The Fourth Amendment requires specification of "the place to be searched, and the persons or things to be seized." In the wiretap context, those requirements are satisfied by identification of the telephone line to be tapped and the particular conversations to be seized. It is not a constitutional requirement that all those likely to be overheard engaging in incriminating conversations be named. Specification of this sort "identif[ies] the person whose constitutionally protected area is to be invaded rather than 'particularly describing' the communications, conversations, or discussions to be seized." *Berger* v. *New York,* 388 U. S., at 59.

[16] That Congress may have so understood the constitutional require-

In any event, for our present purposes it is unnecessary to speculate as to exactly how Congress interpreted *Berger* and *Katz* with respect to the identification issue. It is sufficient to note that in response to those decisions Congress included an identification requirement which on its face draws no distinction based on the telephone one uses, and the United States points to no evidence in the legislative history that supports such a distinction. Indeed, the legislative materials apparently contain no use of the term "principal target" or any discussion of a different treatment based on the telephone from which a suspect speaks.[17] We therefore conclude that a wiretap application must name an individual if the Government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone.

## B

The other statutory provision at issue in this case is 18 U. S. C. § 2518 (8)(d), which provides that the judge shall cause to be served on the persons named in the order or application an inventory, which must give notice of the entry of the order or application, state the disposition of

---

ment is also suggested by the portion of the Senate Report dealing with that provision of S. 917 that required the intercept *order* to "specify the identity, if known, of the individual whose communications are to be intercepted." The Senate Report merely cites *West* v. *Cabell,* 153 U. S. 78 (1894), which concerns the need for proper identification of the subject of an arrest warrant. S. Rep. No. 1097, 90th Cong., 2d Sess., 102 (1968). To the extent that Congress may have considered *West* to apply to wiretap orders, we have no reason to believe that Congress considered its applicability to extend only to those suspects using the target telephone.

[17] At least one Senator read the identification requirement in S. 917 to parallel the identification requirement contained in the statute at issue in *Berger* v. *New York:* "Specificity is required as to the person or persons whose communications will be intercepted." 114 Cong. Rec. 14763 (1968) (remarks of Sen. Percy).

the application, and indicate whether communications were intercepted.[18] Although the statute mandates inventory notice only for persons named in the application or the order, the statute also provides that the judge may order similar notice to other parties to intercepted communications if he concludes that such action is in the interest of justice.[19] Observing that this notice provision does not expressly require law enforcement authorities routinely to supply the judge with specific information upon which to exercise his discretion, the United States contends that it would be inappropriate to read such a requirement into the statute since the judge has the option of asking the law enforcement authorities for whatever information he requires.

Our reading of the legislative history of the discretionary notice provision in light of the purposes of Title III leads us to reject the Government's interpretation. As reported from the Judiciary Committee, § 2518 (8)(d) contained only a provision mandating notice to the persons named in the application or the order; the discretionary notice provision was added by amendment on the floor of the Senate. In introducing that amendment, Senator Hart explained its purpose:

> "The amendment would give the judge who issued the order discretion to require notice to be served on other parties to intercepted communications, even though such

---

[18] The inventory notice must be served within a reasonable time but not later than 90 days after the date the application for an intercept order was filed. On an *ex parte* showing of good cause, service of the inventory may be postponed.

[19] In addition to these provisions for mandatory and discretionary inventory notice, the Government is required to supply the issuing judge with recordings of the intercepted conversations, which are to be sealed according to his directions. 18 U. S. C. § 2518 (8)(a). These notice and return provisions satisfy constitutional requirements. See *Katz* v. *United States,* 389 U. S. 347, 355–356, and n. 16 (1967); *Berger* v. *New York, supra,* at 60.

parties are not specifically named in the court order. The Berger and Katz decisions established that notice of surveillance is a constitutional requirement of any surveillance statute. It may be that the required notice must be served on all parties to intercepted communications. Since legitimate interests of privacy may make such notice to all parties undesirable, the amendment leaves the final determination to the judge." 114 Cong. Rec. 14485–14486 (1968).[20]

In deciding whether legitimate privacy interests justify withholding inventory notice from parties to intercepted conversations, a judge is likely to require information and assistance beyond that contained in the application papers and the recordings of intercepted conversations made available by law enforcement authorities. No purpose is served by holding that those authorities have no routine duty to supply the judge with relevant information. The Court of Appeals for the Ninth Circuit recently confronted this problem of dual responsibility, and we adopt the balanced construction that court placed on § 2518 (8) (d):

"To discharge this obligation the judicial officer must have, at a minimum, knowledge of the particular categories into which fall all the individuals whose conver-

---

[20] It is worth noting that shortly before Senator Hart proposed this amendment to S. 917, Senator Long had read to the Senate portions of a report prepared by the Association of the Bar of the City of New York on federal wiretap legislation. That report commented that parties to intercepted conversations other than those named in the application or order probably should be served with inventory notice, but it also recognized that under some circumstances the provision of such notice could be harmful and gave the following example:

"A, a businessman, talks with his customers, and the latter are served with papers showing that A is being bugged . . . . [T]he damage to confidence in A and to A's reputation in general may damage A unjustly. In this case it would seem that the customers should not be served with the inventory." 114 Cong. Rec. 14476 (1968).

sations have been intercepted. Thus, while precise identification of each party to an intercepted communication is not required, a description of the general class, or classes, which they comprise is essential to enable the judge to determine whether additional information is necessary for a proper evaluation of the interests of the various parties. Furthermore, although the judicial officer has the duty to cause the filing of the inventory [notice], it is abundantly clear that the prosecution has greater access to and familiarity with the intercepted communications. Therefore we feel justified in imposing upon the latter the duty to classify all those whose conversations have been intercepted, and to transmit this information to the judge. Should the judge desire more information regarding these classes in order to exercise his [statutory] § 2518 (8)(d) discretion, . . . the government is [also] required to furnish such information as is available to it." *United States* v. *Chun*, 503 F. 2d 533, 540 (1974). (Footnote omitted.)

We agree with the Ninth Circuit that this allocation of responsibility best serves the purposes of Title III.[21]

Currently, the policy of the Justice Department is to provide the issuing judge with the name of every person who has been overheard as to whom there is any reasonable possibility of indictment. Brief for United States 39. Because it fails to assure that the necessary range of infor-

---

[21] At oral argument, counsel for the United States recognized the merit of the approach specified in *United States* v. *Chun:*

"Perhaps the approach of the Court of Appeals for the Ninth Circuit, which suggested that rather than submitting specific names we should submit categories of persons who had been overheard, is a better policy, would be more helpful to the district court in exercising its discretion, and we would have no objection to following any reasonable policy that the district courts determine would be useful to them in this area." Tr. of Oral Arg. 6–7.

mation will be before the issuing judge, this policy does not meet the test set out in *Chun*. Moreover, where, as here, the Government chooses to supply the issuing judge with a list of all identifiable persons rather than a description of the classes into which those persons fall, the list must be complete. Applying these principles, we find that the Government did not comply adequately with § 2518 (8) (d), since the names of respondents Merlo and Lauer were not included on the purportedly complete list of identifiable persons submitted to the issuing judge.

## III

We turn now to the question whether the District Court properly suppressed evidence derived from the wiretaps at issue solely because of the failure of the law enforcement authorities to comply fully with the provisions of §§ 2518 (1) (b) (iv) and 2518 (8) (d). Section 2515 expressly prohibits the use at trial, and at certain other proceedings, of the contents of any intercepted wire communication or any evidence derived therefrom "if the disclosure of that information would be in violation of this chapter." The circumstances that trigger suppression under § 2515 are in turn enumerated in § 2518 (10) (a):

> "(i) the communication was unlawfully intercepted;
> "(ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
> "(iii) the interception was not made in conformity with the order of authorization or approval."

There is no basis on the facts of this case to suggest that the authorization orders are facially insufficient, or that the interception was not conducted in conformity with the orders. Thus, only § 2518 (10) (a) (i) is relevant: Were the communications "unlawfully intercepted" given the violations of §§ 2518 (1) (b) (iv) and 2518 (8) (d)? [22]

---

[22] The availability of the suppression remedy for these statutory,

Resolution of that question must begin with *United States* v. *Giordano,* 416 U. S. 505 (1974), and *United States* v. *Chavez,* 416 U. S. 562 (1974). Those cases hold that "[not] every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *Id.,* at 574–575. To the contrary, suppression is required only for a "failure to satisfy any of those statutory requirements that directly and substan-

as opposed to constitutional, violations, see nn. 15 and 19, *supra,* turns on the provisions of Title III rather than the judicially fashioned exclusionary rule aimed at deterring violations of Fourth Amendment rights. *United States* v. *Giordano,* 416 U. S. 505, 524 (1974).

The concurring opinion of THE CHIEF JUSTICE contends that respondents Donovan, Robbins, and Buzzacco lack standing even to seek suppression. *Post,* at 440–441. This contention rests on the ground that Congress rejected an amendment proposed by Senators Long and Hart that would have added a fourth ground justifying suppression—namely, that the person against whom the Government sought to introduce the evidence was not named in the court order. Since these three respondents would have been entitled to suppression under the rejected amendment, the concurring opinion concludes they cannot seek suppression here.

This view fails to recognize that § 2518 (10)(a) establishing the suppression remedy provides *alternative* grounds on which one can seek suppression of evidence derived from a wiretap. Thus, the mere fact that Congress chose not to add a fourth alternative could not mean that it intended to prevent persons who would have been covered by that alternative from seeking suppression on one of the other grounds. As the Justice Department commented, in the same statement cited in the concurring opinion: "The [Long and Hart] amendment is designed to limit the scope of electronic surveillance, but it accomplishes this purpose in an artificial manner. *So long as a court order is validly obtained,* evidence obtained under the order should be admissible against any person not merely against the person named in the order." 114 Cong. Rec. 14718 (1968) (emphasis added). Here, respondents Donovan, Robbins, and Buzzacco challenge the validity of the court order, and nothing in either Congress' rejection of the proposed amendment or the Justice Department's comment thereon suggests that § 2518 (10)(a) (i) is unavailable to persons who might have had a remedy under a provision not enacted by Congress.

tially implement the congressional intention to limit the use of intercept procedures to those, situations clearly calling for the employment of this extraordinary investigative device." *United States* v. *Giordano, supra,* at 527.

*Giordano* concerned the provision in Title III requiring that an application for an intercept order be approved by the Attorney General or an Assistant Attorney General specially designated by the Attorney General. Concluding that Congress intended to condition the use of wiretap procedures on the judgment of senior officials in the Department of Justice, the Court required suppression for failure to comply with the approval provision. *Chavez* concerned the statutory requirement that the application for an intercept order specify the identity of the official authorizing the application. The problem in *Chavez* was one of misidentification; although the application had in fact been authorized by the Attorney General, the application erroneously identified an Assistant Attorney General as the official authorizing the application. The Court concluded that mere misidentification of the official authorizing the application did not make the application unlawful within the meaning of § 2518 (10) (a) (i) since that identification requirement did not play a "substantive role" in the regulatory system. 416 U. S., at 578.

In the instant case, the Court of Appeals concluded that both the identification requirement of § 2518 (1) (b) (iv) and the notice requirement of § 2518 (8) (d) played a "central role" in the statutory framework, and for that reason affirmed the District Court's order suppressing relevant evidence. Although both statutory requirements are undoubtedly important, we do not think that the failure to comply fully with those provisions renders unlawful an intercept order that in all other respects satisfies the statutory requirements.

## A

. As to § 2518 (1)(b)(iv), the issue is whether the identification in an intercept application of all those likely to be overheard in incriminating conversations plays a "substantive role" with respect to judicial authorization of intercept orders and consequently imposes a limitation on the use of intercept procedures. The statute provides that the issuing judge may approve an intercept application if he determines that normal investigative techniques have failed or are unlikely to succeed and there is probable cause to believe that: (i) an individual is engaged in criminal activity; (ii) particular communications concerning the offense will be .obtained through interception; and (iii) the target facilities are being used in connection with the specified criminal activity. §§ 2518 (3)(a–d). That determination is based on the "full and complete statement" of relevant facts supplied by law enforcement authorities. If, after evaluating the statutorily enumerated factors in light of the information contained in the application, the judge concludes that the wiretap order should issue, the failure to identify additional persons who are likely to be overheard engaging in incriminating conversations could hardly invalidate an otherwise lawful judicial authorization. The intercept order may issue only if the issuing judge determines that the statutory factors are present, and the failure to name additional targets in no way detracts from the sufficiency of those factors.

This case is unlike *Giordano*, where failure to satisfy the statutory requirement of prior approval by specified Justice Department officials bypassed a congressionally imposed limitation on the use of the intercept procedure. The Court there noted that it was reasonable to believe that requiring prior approval from senior officials in the Justice Department "would inevitably foreclose resort to wiretapping in various situations where investigative personnel would otherwise seek intercept authority from the court

and the court would very likely authorize its use." 416 U. S., at 528. Here, however, the statutorily imposed preconditions to judicial authorization were satisfied, and the issuing judge was simply unaware that additional persons might be overheard engaging in incriminating conversations. In no meaningful sense can it be said that the presence of that information as to additional targets would have precluded judicial authorization of the intercep⸴ [23] Rather, this case resembles *Chavez,* where we held that a wiretap was not unlawful simply because the issuing judge was incorrectly informed as to which designated official had authorized the application. The *Chavez* intercept was lawful because the Justice Department had performed its task of prior approval, and the instant intercept is lawful because the application provided sufficient information to enable the issuing judge to determine that the statutory preconditions were satisfied.[24]

---

[23] There is no suggestion in this case that the Government agents knowingly failed to identify respondents Donovan, Robbins, and Buzzacco for the purpose of keeping relevant information from the District Court that might have prompted the court to conclude that probable cause was lacking. If such a showing had been made, we would have a different case. Nor is there any suggestion that as a result of the failure to name these three respondents they were denied the mandatory inventory notice supplied to persons named in the application. 18 U. S. C. § 2518 (8) (d). Respondents Donovan, Robbins, and Buzzacco were among the 37 persons served with the initial inventory.

[24] No one suggests that the failure to identify in a wiretap application individuals who are "unknown" within the meaning of the statute, see *United States* v. *Kahn,* 415 U. S. 143 (1974), requires suppression of intercepted conversations to which those individuals were parties. Though recognizing that the failure to identify such an "unknown" individual does not make unlawful an otherwise valid intercept order, respondents Donovan, Robbins, and Buzzacco suggest that the opposite is true with respect to the failure to identify in a wiretap application individuals who are "known" within the meaning of the statute. Counsel for these respondents suggested at oral argument that this difference in result is justified by analogy to warrantless searches or arrests. Tr. of Oral Arg. 40. Although law enforcement officials can often take action without a warrant when they have

Finally, we note that nothing in the legislative history suggests that Congress intended this broad identification requirement to play "a central, or even functional, role in guarding against unwarranted use of wiretapping or electronic surveillance." *United States* v. *Chavez,* 416 U. S., at 578. Neither S. 675 nor S. 2050, the predecessor bills of S. 917, contained an identification provision. See *supra,* at 426. The only explanation given in the Senate Report for the inclusion of the broad identification provision was that it was intended to reflect what Congress perceived to be the constitutional command of particularization. This explanation was offered with respect to all the information required by § 2518 (1)(b) to be set out in an intercept application. No additional guidance can be gleaned from the floor debates, since they contain no substantive discussion of the identification provision.[25]

been unable to foresee the circumstances that eventually confronted them, they still must obtain a search or arrest warrant when their prior knowledge is sufficient to establish probable cause, and it is suggested that the same principle applies here. The major flaw in that reasoning is that this case does not concern warrantless action. Here, the omission on the part of law enforcement authorities was not a failure to seek prior judicial authorization, but a failure to identify every individual who could be expected to be overheard engaging in incriminating conversations. That the complete absence of prior judicial authorization would make an intercept unlawful has no bearing on the lawfulness of an intercept order that fails to identify every target.

[25] Even if we assume that Congress thought that a broad identification requirement was constitutionally mandated, it does not follow that Congress imposed *statutory* suppression under §§ 2515 and 2518 (10)(a) (i) as a sanction for noncompliance. In limiting use of the intercept procedure to "the most precise and discriminate circumstances," S. Rep. No. 1097, 90th Cong., 2d Sess., 102 (1968), Congress required law enforcement authorities to convince a district court that probable cause existed to believe that a specific person was committing a specific offense using a specific telephone. This requirement was satisfied here when the application set forth sufficient information to indicate that the primary targets were conducting a gambling business over four particular telephones. Nothing

## B

We reach the same conclusion with respect to the Government's duty to inform the judge of all identifiable persons whose conversations were intercepted. As noted earlier, the version of Title III that emerged from the Senate Judiciary Committee provided only for mandatory notice to the "persons named in the order or the application." The Senate Report detailed the purpose of that provision:

> "[T]he intent of the provision is that the principle of postuse notice will be retained. This provision alone should insure the community that the techniques are reasonably employed. Through its operation all authorized interceptions must eventually become known at least to the subject. He can then seek appropriate civil redress, for example, under section 2520 . . . if he feels that his privacy has been unlawfully invaded." S. Rep. No. 1097, 90th Cong., 2d Sess., 105 (1968).

The floor discussion concerning the amendment adding the provision for discretionary notice merely indicates an intent to provide notice to such additional persons as may be constitutionally required.

Nothing in the structure of the Act or this legislative history suggests that incriminating conversations are "unlawfully intercepted" whenever parties to those conversations do not receive discretionary inventory notice as a result of the Government's failure to inform the District Court of their identities. At the time inventory notice was served on the other identifiable persons, the intercept had been completed and the conversations had been "seized" under a valid intercept order. The fact that discretionary notice reached

---

in the legislative history indicates that Congress intended to declare an otherwise constitutional intercept order "unlawful" under § 2518 (10) (a) (i)—resulting in suppression under § 2515—for failure to name additional targets.

39 rather than 41 identifiable persons does not in itself mean that the conversations were unlawfully intercepted.[26]

The legislative history indicates that postintercept notice was designed instead to assure the community that the wiretap technique is reasonably employed. But even recognizing that Congress placed considerable emphasis on that aspect of the overall statutory scheme, we do not think that postintercept notice was intended to serve as an independent restraint on resort to the wiretap procedure.

## IV

Although the Government was required to identify respondents Donovan, Robbins, and Buzzacco in the December 26 application for an extension of the initial intercept, failure to do so in the circumstances here presented did not warrant suppression under § 2518 (10)(a)(i). Nor was suppression justified with respect to respondents Merlo and Lauer simply because the Government inadvertently omitted their names from the comprehensive list of all identifiable persons whose conversations had been overheard. We hold that this is the correct result under the provisions of Title III, but we re-

---

[26] Counsel for respondents Merlo and Lauer conceded at oral argument that the failure to name those respondents in the proposed inventory order was not intentional, Tr. of Oral Arg. 32, and we are therefore not called upon to decide whether suppression would be an available remedy if the Government knowingly sought to prevent the District Court from serving inventory notice on particular parties. Nor does this case present an opportunity to comment upon the suggestion, recognized by the United States, Brief 49 n. 40, that suppression might be required if the agents knew before the interception that no inventory would be served.

Moreover, respondents Merlo and Lauer were not prejudiced by their failure to receive postintercept notice under either of the District Court's inventory orders. As noted earlier, the Government made available to all defendants the intercept orders, applications, and related papers. See n. 7, *supra*. And in response to pretrial discovery motions, the Government produced transcripts of the intercepted conversations.

emphasize the suggestion we made in *United States* v. *Chavez,* that "strict adherence by the Government to the provisions of Title III would nonetheless be more in keeping with the responsibilities Congress has imposed upon it when authority to engage in wiretapping or electronic surveillance is sought." 416 U. S., at 580.

The judgment of the Court of Appeals is reversed, and the case is remanded to that court for further proceedings consistent with this opinion.

*It is so ordered.*

MR. CHIEF JUSTICE BURGER, concurring in part and concurring in the judgment.

I concur in the Court's judgment and in all except Part II–A of the Court's opinion. I cannot agree, however, with the Court's construction of the identification provisions of § 2518 (1) (b) (iv), since I believe the application for surveillance in this case complied with statutory requirements. However, the precise reach of the identification requirement is irrelevant, because respondents are foreclosed from seeking suppression in any event.

Respondents Donovan, Robbins, and Buzzacco contend that, since their names were not contained in the wiretap application, suppression is required under the express exclusionary provision of Title III, § 2518 (10) (a). Their contention flies in the teeth of legislative history directly to the contrary. In the evolution of Title III, Congress considered and rejected a proposed amendment which would have expressly conferred the exclusionary benefit that respondents now seek. Specifically, Senators Long and Hart proposed the addition of a fourth subdivision to the suppression provision contained in § 2518 (10) (a). 114 Cong. Rec. 14718 (1968). Had that proposal been adopted, it would have allowed suppression of intercepted conversations at the behest of any aggrieved person on the ground that he or she was not named in

the application or extension.[1] In its comment on the proposal, the Department of Justice said:

> "The amendment would permit intercepted communications to be used in evidence *only against the persons named in the court order, not against other persons." Ibid.* (Emphasis supplied.)

Consistent with the Justice Department's recommendation, the Senate rejected the result which respondents now seek.

Even if the legislative history were silent with respect to suppression, however, I would nonetheless take issue with the Court's analysis of the identification requirement. In my view, Congress required no more than that a wiretap application identify by name the primary user of the monitored facility.

Congress drafted this statute with exacting precision. As its principal sponsor, Senator McClellan, put it:

> "[A] bill as controversial as this . . . requires close attention to the dotting of every 'i' and the crossing of every 't' . . . ." *Id.,* at 14751.

Under these circumstances, the exact words of the statute provide the surest guide to determining Congress' intent, and we would do well to confine ourselves to that area. The statutory provision before us requires the wiretap application to specify the "identity of *the* person, if known, committing the offense and whose communications are to be intercepted." 18 U. S. C. § 2518 (1)(b)(iv). (Emphasis supplied.) As the Court correctly indicates, the identification requirement

---

[1] The proposed addition provided:

"(iv) That he was not the subject of such application, authorization, or extension thereof."

It is true that the proposal did not speak directly to instances, such as here, where persons arguably should have been named in the application and order, but were not. But respondents, as unnamed persons, would plainly have had a suppression remedy if the amendment had passed.

was carefully added in the wake of *Berger* v. *New York,* 388 U. S. 41 (1967). That case involved the constitutionality of a New York statute requiring the naming of "the person *or persons* whose communications . . . are to be overheard." That very different statute plainly put Congress on notice that an identification provision could call, as did New York's, for the naming of multiple parties. Indeed, while requiring only the identification of *"the* person" whose communications are to be intercepted, Congress anticipated the obvious fact that interceptions effected pursuant to a single application and order could potentially affect a large number of persons. Standing to object to intercepted communications is conferred upon "[a]ny aggrieved person . . . ." § 2518 (10)(a). In addition, a civil damages remedy is conferred upon "[a]ny person" whose communications are unlawfully intercepted or used in violation of the statute. Thus, in fashioning highly specific requirements with respect to wiretap applications, Congress failed to employ language found in other parts of the same statute and so carefully written into the state statute at issue in the *Berger* case.

The Court emphasizes, however, that the statute expressly recognizes that more than one person *may* be named in a wiretap application. *Ante,* at 425. That is indeed true. See §§ 2518 (1)(e), (8)(d). But I would think this is all the more reason for focusing upon the precise language in the provision establishing explicit *requirements* for an application. Since Congress expressly contemplated that applications might contain more than one name, its failure in § 2518 (1)(b)(iv) to require the naming of "any person" or "the persons" whose communications are to be intercepted must mean that an open-ended identification requirement was never intended. In other words, Congress reasonably foresaw that, for a variety of reasons, actual wiretap applications might contain the names of more than one person. But Congress did not translate its recognition of what an appli-

cation *might* reasonably contain into a command as to what it *must* contain.

Assuming that plain words of a statute might have to bow, in some circumstances, to compelling legislative history to the contrary, nothing of that kind is found here. As the Court observes, the earlier bills introduced in the Senate contained no identification provision at all. After *Berger* and *Katz* v. *United States,* 389 U. S. 347 (1967), were decided, the requirement was added in what was plainly an abundance of caution. For this Court in *Berger* flatly discounted any value in New York's broad identification requirement.

> "It is true that the statute requires the naming of 'the person or persons whose communications, conversations or discussions are to be overheard or recorded . . . .' *But this does no more than identify the person whose constitutionally protected area is to be invaded rather than 'particularly describing' the communications, conversations, or discussions to be seized."* 388 U. S., at 59. (Emphasis supplied.)

As shown by its rejection of the proposed suppression provision—which obviously would have had the practical effect of increasing the number of persons identified in wiretap applications—Congress correctly perceived little value in multiplying indefinitely the number of names to be set forth in wiretap applications and orders. This is particularly true since no Fourth Amendment values are served by a sweeping identification requirement. The Court has made clear:

> " 'The Fourth Amendment requires a warrant to describe only "the place to be searched, and the persons or things to be seized," *not the persons from whom things will be seized.'* " *United States* v. *Kahn,* 415 U. S. 143, 155 n. 15 (1974). (Emphasis supplied.)

Hence, the statute, as it presently stands, comports entirely with Fourth Amendment requirements, and thus achieves the

express legislative purpose of " 'reflect[ing] the constitutional commands of particularization.' " *Ante,* at 427. Under those circumstances, it ill serves this Court to speculate that our coequal branch of Government, despite the clear teaching of the Constitution, incorrectly surmised "that the Constitution [may have] required the naming . . . of all suspects rather than just the primary user." *Ibid.* In any event, if our own decisions have created confusion in the Congress, which is not surprising, nothing is gained by perpetuating that confusion in the face of Congress' clear intent to comply with this Court's interpretation of the Fourth Amendment.

In short, the Court has redrafted a statute passed by Congress to make it identical to a statutory provision found valueless by this Court a few years ago in the *Berger* case. This undertaking, unfortunately, is not entirely without consequence, notwithstanding the Court's refusal to approve suppression of the evidence here. Among other things, federal officers are potentially subject to a civil damages action, with compensatory damages of not less than $1,000, plus punitive damages, plus reasonable attorneys' fees.[2] Nor is this federal remedy exclusive. State-provided damages remedies are not pre-empted. S. Rep. No. 1097, 90th Cong., 2d Sess., 107 (1968). Damages awards aside, the Court's opinion—albeit in dictum—hints that suppression may indeed be in the offing if an intentional "violation" is shown. Finally, district judges will now be put to the task, at least in some cases, of determining whether probable cause exists with respect to each person listed in the application. § 2518 (3)(d). Judges may well wonder why such burdens are imposed upon them for a gain which the Court found illusory in the *Berger* case.

---

[2] 18 U. S. C. § 2520. Since a court order will necessarily reflect the officers' "violation," it is not entirely certain that reliance upon a court order will provide a sufficient defense to a civil damages action.

I would therefore interpret this statute to mean just what it says and no more. Wisely or not, Congress decided, consistent with Fourth Amendment strictures, to require only the identification of "the person" whose conversations are to be intercepted. Since Congress demonstrably knew how to use other language when it so chose, I would take Congress at its word and not try to "improve" on its draftsmanship.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting in part.

The Court today holds that an application for a warrant to authorize a wiretap under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U. S. C. §§ 2510–2520, must name all individuals who the Government has probable cause to believe are committing the offense being investigated and will be overheard. See 18 U. S. C. § 2518 (1)(b)(iv). It also holds that the Government must provide sufficient information to the issuing judge to allow him to exercise the discretion provided by 18 U. S. C. § 2518 (8)(d). I fully agree with both of these holdings. The Court concludes, however, that if the Government violates these statutory commands, it is nevertheless free to use the intercepted communications as evidence in a criminal proceeding. I cannot agree.

I continue to adhere to the position, expressed for four Members of the Court by Mr. Justice Douglas in his dissent in *United States* v. *Chavez,* 416 U. S. 562, 584–585 (1974), that Title III does not authorize "the courts to pick and choose among various statutory provisions, suppressing evidence only when they determine that a provision is 'substantive,' 'central,' or 'directly and substantially' related to the congressional scheme." The Court has rejected that argument, however, see *United States* v. *Chavez, supra; United States* v. *Giordano,* 416 U. S. 505 (1974), and nothing is to be gained by renewing it here. But even under the standard set forth

in *Giordano* and *Chavez* and reaffirmed by the Court today, *ante,* at 433–434, the evidence at issue here should be suppressed.

## I

Title III requires that an application for a warrant to authorize wiretapping disclose "the identity of the person, if known, committing the offense and whose communications are to be intercepted." 18 U. S. C. § 2518 (1)(b)(iv). The Court properly rejects the Government's contention that this provision requires it to name only the "principal target" of an investigation. In doing so, the Court relies both on the plain language and legislative history of the section, which do not support the Government's position, and on the statutory context. *Ante,* at 424–428. Part of that context is the obvious assumption of other portions of Title III that wiretap applications will name more than one target. See 18 U. S. C. §§ 2518 (1)(e), (8)(d). Another part is

> "the fact that identification of an individual in an application for an intercept order *triggers other statutory provisions.* First, § 2518 (1)(e) requires an intercept application to disclose all previous applications 'involving any of the same persons . . . specified in the application.' . . . Second, § 2518 (8)(d) mandates that an inventory notice be served upon 'the persons named in the order or the application.' " *Ante,* at 425 n. 14 (emphasis added).

Yet in determining whether the identification requirement "directly and substantially implement[s] the congressional intention to limit the use of intercept procedures," *United States* v. *Giordano, supra,* at 527, or plays a "substantive role" in the "regulatory system" established by Congress, *United States* v. *Chavez, supra,* at 578, the Court ignores the requirement's function as a statutory "trigger." In its analysis, the Court focuses solely on whether a list of ad-

ditional names would affect a judge who must decide whether to issue a warrant. The Court reasons that once the judge has concluded that the specific requirements of § 2518 (3) [1] have been met, the presence of additional names in the warrant application could not change his decision. *Ante,* at 435–436. Failure to provide those names is, therefore, insignificant.

The Court's reasoning is doubly flawed. First, a judge is not required to issue a warrant if the prerequisites of § 2518 (3) are satisfied; he *may* do so. Once he determines that the § 2518 (3) requirements have been met, he still must decide whether the invasion of privacy by the proposed wiretap is justified under the circumstances. [2] Second, what is at issue here is more than a simple list of names. Section 2518 (1)(e) requires that the Government disclose to the court the history of all prior applications to intercept the communications of anyone named in a warrant application.

---

[1] Title 18 U. S. C. § 2518 (3) provides, in pertinent part:

"Upon such application the judge may enter an ex parte order . . . if the judge determines on the basis of the facts submitted by the applicant that—

"(a) there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter;

"(b) there is probable cause for belief that particular communications concerning that offense will be obtained through such interception;

"(c) normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous;

"(d) there is probable cause for belief that the facilities from which, or the place where, the wire or oral communications are to be intercepted are being used, or are about to be used, in connection with the commission of such offense, or are leased to, listed in the name of, or commonly used by such person."

[2] The information which the applicant is required to provide to the district court by §§ 2518 (1)(d)–(f) would be superfluous if the decision whether to issue a warrant depended only on the findings specified in § 2518 (3).

A history of recent applications would at the least cause a judge to consider whether the application before him was an attempt to circumvent the restrictive rulings of another judge or to continue an unjustified invasion of privacy.[3] The decision whether to issue the warrant would certainly be affected by such consideration.[4]

It is true, as the Court notes, *ante,* at 436 n. 23,[5] that there is no allegation in this case that had the District Court been informed that the Government expected to overhear respondents Donovan, Buzzacco, and Robbins discussing illegal gambling activities it would not have issued a warrant. But that fact is irrelevant to an analysis of the role of the naming requirement in the regulatory system established by Congress. In *Giordano,* the Court rejected the argument that the Attorney General's failure to authorize the application for a warrant could be disregarded because the Attorney General had later ratified the application, thus demonstrating that he would have approved it originally. 416 U. S., at 523–524, n. 12. The important consideration was whether the requirement of high-level authorization was designed to play an important role, not whether it would have mattered in the particular case. The same analysis should be used here.

---

[3] Cf. *United States* v. *Bellosi,* 163 U. S. App. D. C. 273, 501 F. 2d 833 (1974).

[4] Thus, this case is unlike *United States* v. *Chavez.* There, the Court concluded that the misidentification of the authorizing official as an Assistant Attorney General when the Attorney General had actually authorized the warrant application could not have affected the judge's decision to issue the warrant. 416 U. S., at 572.

[5] The Court actually states only that there is no suggestion that the failure to name respondents kept from the judge information "that might have prompted the court to conclude that probable cause was lacking." As I have shown, that formulation understates the District Court's role.

Moreover, even where there is no prior interception or application to disclose, as is apparently the case here, the naming requirement plays a vital role in the system designed by Congress. For unless that requirement is complied with from the first interception, no judge will know that a later interception is not the first. In addition, the naming requirement triggers the mandatory notification provision of § 2518 (8)(d), another important component of the congressional design.[6]

Thus, I conclude that the naming requirement recognized by the majority does play a "substantive role" in the system designed by Congress to limit the use of electronic surveillance. Failure to comply with that requirement, therefore, should lead to suppression on the ground that "the communication was unlawfully intercepted." 18 U. S. C. § 2518 (10)(a)(i).

## II

The Court's discussion of the consequences of the Government's failure to comply with the notice provision of § 2518 (8)(d) parallels its discussion of the naming requirement, and is similarly flawed. The Court does recognize that the notice provision was designed to assure the community that the wiretap technique is reasonably employed and that "Congress placed considerable emphasis on that aspect of the overall statutory scheme." *Ante,* at 439. But because notice occurs after the intercept is completed, and because notice is not itself "an independent restraint on resort to the wiretap procedure," the Court concludes that failure to notify does not render an interception "unlawful" under § 2518 (10)(a)(i). *Ante,* at 439.

Again, the Court takes too narrow a view of the provision at issue, ignoring its place in the system Congress has created to restrain wiretapping. That system involves not only direct

---

[6] See Part II, *infra.*

restraints on applying for a warrant, but also restraints which reduce wiretaps by providing sanctions for misuse of surveillance techniques. Those sanctions are both criminal, 18 U. S. C. § 2511 (1), and civil, 18 U. S. C. § 2520. Congress designed the notice provisions of § 2518 (8)(d) to provide the information necessary to make the civil sanctions of § 2520 meaningful. The congressional analysis of § 2520 states:

> "Injunctive relief, with its attendant discovery proceedings, is not intended to be available . . . . It is expected that civil suits, if any, will instead grow out of the filing of inventories under section 2518 (8)(d)." S. Rep. No. 1097, 90th Cong., 2d Sess., 107 (1968).

See also *id.*, at 105.

The Court's conclusion that the notice provision is not central dismantles this carefully designed congressional structure.

### III

The Court's opinion implies that if the violations of Title III considered here had been intentional, the result would be different. *Ante*, at 436 n. 23, 439 n. 26. This must be so, for surely this Court would not tolerate the Government's intentional disregard of duties imposed on it by Congress. I also assume that if the Government fails to establish procedures which offer reasonable assurance that it will strictly adhere to the statutory requirements, see *ante*, at 439–440, resulting failures to comply will be recognized as intentional. There is, therefore, reason to hope that the Court's admonition that the Government should obey the law will have some effect in the future.

But that hope is a poor substitute for certainty that the Government will make every effort to fulfill its responsibilities under Title III. We can obtain that certainty only by according full recognition to the role of the naming and notice

requirements in the statutory scheme created by Congress. I respectfully dissent from the Court's failure to do so.

MR. JUSTICE STEVENS, concurring in part and dissenting in part.

For the reasons stated in Parts I and II of MR. JUSTICE MARSHALL's opinion, I respectfully dissent from Parts III and IV of the Court's opinion. I join Parts I and II of the Court's opinion.