STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v.
JOYCE ARLENE LUCIANO, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 1, 1977—Decided March 18, 1977.

Before Judges HALPERN, ALLCORN and BOTTER.

*Ms. Helen E. Szabo,* Deputy Attorney General, argued the cause for appellant (*Mr. William F. Hyland,* Attorney General of New Jersey, attorney).

*Mr. Robert M. Biagiotti* argued the cause for respondent (*Mr. Donald R. Conway,* attorney).

The opinion of the court was delivered by

BOTTER, J. A. D. Pursuant to leave granted by this court[1] the State appeals from the trial judge's order of November 29, 1976 suppressing certain evidence against defendant Joyce Arlene Luciano which had been procured pursuant to orders authorizing telephone wiretaps and electronic interception of oral communications by "bugging" devices. The orders had been entered in purported compliance with the New Jersey Wiretapping and Electronic Surveillance Control Act, *N. J. S. A.* 2A:156A–1 *et seq.* Luciano and four other defendants, including the two principal targets of the investigation, Anthony Carminati and Vincent Toronto, were subsequently indicted for loansharking (*N. J. S. A.* 2A:119A–1) and related offenses.

The trial judge ruled that Luciano was a person whose identity was "known" prior to the entry of certain intercept orders and therefore, pursuant to *N. J. S. A.* 2A:156A–12(b), she should have been named in orders which authorized interception of her communications and those of others believed to be engaged in the criminal scheme. The trial judge suppressed evidence against Luciano that had

---

[1] The order granting leave to appeal provided that, pursuant to *R.* 2:11–2, the appeal would be determined on the motion papers and any additional papers filed by the parties. The court also fixed an early date for oral argument.

The State contends that, without seeking leave, it had the right to appeal from the orders of suppression pursuant to *R.* 2:2–3(a), this being a case where such right to appeal is provided by law, namely, by *N. J. S. A.* 2A:156A–21. We need not decide the issue, however, since leave to appeal has been granted.

been seized pursuant to orders for electronic surveillance entered in January, February, March and April of 1975.

The first telephone wiretap order was signed by an authorized judge (*N. J. S. A.* 2A:156A-2(i)) on December 13, 1974. It allowed the wiretapping of two telephones to intercept communications of Carminati and Toronto and other persons engaging in illegal gambling, bribery and loansharking activities and conspiracy to commit these offenses. The telephones were listed to 803 Building Maintenance, Inc. at its offices in Englewood Cliffs, New Jersey. Thereafter, on January 4, 1975 an application was made for an order authorizing electronic interception of oral, nontelephonic conversations taking place at the same offices which were used by Carminati and Toronto to further their alleged criminal operations. In the affidavit supporting this application Luciano was mentioned only as the "receptionist" at those offices. Despite the elaborate recitation of details disclosed by the prior investigation, nothing in the affidavits of December 13, 1974 and January 4, 1975 indicated any knowledge of Luciano's involvement in the criminal activity.

■ Defendant Luciano was not a known subject whose conversations concerning criminal activity under investigation were the target of the wiretap and "bugging" orders of December 13, 1974 and January 4, 1975. *N. J. S. A.* 2A:156A-12(b) requires the order to state the identity or description of "the person, if known, whose communications are to be intercepted * * *." On January 4, 1975 Luciano was not such a person. At that time the investigators did not have "probable cause to believe" that she was a person "committing the offense" whose "communications [were] to be intercepted." *N. J. S. A.* 2A:156A-9 and 10. See *State v. Cirillo,* 149 *N. J. Super.* 577 (App. Div., 1977), and *cf. United States v. Kahn,* 415 *U. S.* 143, 94 *S. Ct.* 977, 39 *L. Ed.* 2d 225 (1974), interpreting a similar provision in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 *U. S. C. A.* § 2518(4)(a). Thus, the trial

judge erred in concluding that Luciano's communications were unlawfully intercepted by the police while operating under the authority of the January 4 order.

However, Luciano's role in the criminal enterprise was discovered on January 7, 1975. As revealed in the affidavit supporting the first application to extend the December 13 wiretap order, Luciano was overheard on January 7, 1975 discussing weekly payment records of alleged loanshark victims. (Paragraph 14 of "renewal affidavit of application" dated January 15, 1975.) She was also named in affidavits supporting other extension applications made in February, March and April. From January 7, 1975 onward Luciano should have been named in orders extending the electronic surveillance since there was probable cause to believe she was engaged in the criminal activity being investigated and it was expected that her conversations would be intercepted by the electronic devices. *N. J. S. A.* 2A:156A-12(b) ; *N. J. S. A.* 2A:156A-9; *State v. Cirillo, supra; cf. United States v. Donovan,* —— *U. S.* ——, ——, 97 *S. Ct.* 658, 668, 50 *L. Ed.* 2d 652, 668 (1977).

*N. J. S. A.* 2A:156A-21(b) provides that an aggrieved party — that is, one who was a party to any intercepted wire or oral communication or against whom the interception was directed (*N. J. S. A.* 2A:156A-2(k)) — may move to suppress the contents of an intercepted communication on the ground that the authorizing order is "insufficient on its face." In this case we cannot say that the intercept orders were insufficient on their "face." *Cf. United States v. Donovan, supra,* —— *U. S.* at ———, 97 *S. Ct.* at 671, 50 *L. Ed.* 2d at 671. Since the orders do not indicate that defendant was a person who was a target of the interception and whose identity was known, it cannot be said that the orders were *facially* insufficient as to Luciano. However, *N. J. S. A.* 2A:156A-21(a) allows the motion to suppress to be brought if the communication was "unlawfully intercepted." Because of the serious threat to the liberty and privacy of the public posed by electronic

surveillance, it is important to insure strict compliance with all provisions of the Electronic Surveillance Control Act. We conclude, therefore, that suppression of evidence should be considered an available remedy for the interception of communications of a person who was a known target of the electronic surveillance but who was not named in the authorizing order. This view is consistent with the intent of the Legislature as expressed in *N. J. S. A.* 2A:156A–21(a). Moreover, strict compliance with the provisions of the act should be enforced by those few judges who have been authorized to issue orders thereunder.

Nevertheless, we must consider whether the remedy of suppression is essential in the case at hand. We do not read the provisions of *N. J. S. A.* 2A:156A–21 to mean that suppression was intended by the Legislature as mandatory in all cases of noncompliance. See *State v. Cirillo, supra; cf. United States v. Donovan, supra.* Here, as in *Cirillo, supra,* defendant does not dispute that probable cause for the issuance of the intercept orders was disclosed in the applications. The applications here fully disclosed the nature of the investigation, the sources of information leading to the investigation, the name of the law enforcement officer who had infiltrated the ranks of the conspirators and secured their confidence, the information he had gathered and the participants who were known. The affidavits established the statutory grounds for the issuance of the orders, namely, that (a) the targets of the interception were engaged in criminal activity; (b) communications concerning the activity may be obtained through such interception; (c) normal investigative procedures had failed or were unlikely to succeed or were too dangerous; (d) the facilities from which or the place where the interceptions were to be made had been used or were commonly used by such individuals, and (e) the investigators were qualified to make such interceptions. *N. J. S. A.* 2A:156A–10. Thus, the "substantive" statutory (and constitutional) criteria for the search by electronic means were fully satisfied. The infirmity here

is the failure to name Luciano in the orders issued after she had become "known," although the grounds for the issuance of the orders were fully established.

We note, as in *Cirillo,* that there has been no showing of bad faith or "insolence" in office on the part of the law enforcement officers. There was no concealment of the expectation that Luciano's conversations would be intercepted. The affidavits reciting the details of the investigative results filled approximately 185 written pages. At most, Luciano's name was omitted from the orders by an oversight, probably because this issue had not been raised previously in any reported cases in this State. No prejudice to Luciano has been shown. It does not appear that she lost any advantage which would have accrued had she been named in the orders as an object of the interception. As noted in *Cirillo,* naming the known target will help fulfill other requirements of the Act, such as giving notice to the issuing judge of prior applications affecting the same person. *N. J. S. A.* 2A:156A–9(e). But here that requirement was satisfied, since all prior applications were submitted to the same issuing judge. In fact, affidavits supporting earlier applications were annexed to subsequent applications. Moreover, orders were entered on July 23, 1975 requiring service upon defendant of inventories of information prescribed by *N. J. S. A.* 2A:156A–16, and such service was made by registered mail, on July 24, 1975, as authorized by said orders. Contrary to defendant's contention, the inventories were served within the time prescribed by *N. J. S. A.* 2A:156A–16. Service is complete upon mailing. *R.* 1:5–4(b).

We conclude, therefore, that suppression of the evidence was too extreme a remedy in this case for the error that occurred. *State v. Cirillo, supra;* see *State v. Dye,* 60 *N. J.* 518, 539–542 (1972), *cert.* den. 409 *U. S.* 1090, 93 *S. Ct.* 699, 34 *L. Ed.* 2d 675 (1972); *State v. Sidoti,* 134 *N. J. Super.* 426 (App. Div. 1975). The ruling below was made before *State v. Cirillo* was decided and the trial judge did

not have the benefit of our views in that case. While we sympathize with the need for a tight rein on electronic surveillance, as designed by the Legislature, in this case we find no violation of a "substantive" right that warrants the extreme remedy of suppression of criminal evidence. We believe that these opinions will serve to identify deficiencies in the practice which should be corrected by authorized issuing judges in the future and that such deficiencies will not recur.

Reversed and remanded.