UNITED STATES of America

v.

Eli David KIRKLAND, Defendant.

Crim. No. 88–25–MAC (WDO).

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 3, 1989.

Samuel A. Wilson, Jr., Asst. U.S. Atty., Macon, Ga., for plaintiff.

Thomas F. Jarriel, Macon, Ga., for defendant.

## ORDER

OWENS, Chief Judge.

On July 29, 1988, in full compliance with the procedures outlined in 18 U.S.C. § 2518, an assistant United States attorney prepared and presented to United States District Court Judge Duross Fitzpatrick an application for an order authorizing the interception of certain wire communications to and from telephones subscribed to by Percy Donald Livingston, including telephone number (912) 471–1103 at Northside Seafood and Beef when used by Eli David Kirkland and other named persons. Also presented, in addition to the required probable cause affidavit, was a proposed order prepared by the assistant United States attorney.

Title 18, U.S.C. § 2518(5), as amended in 1986 by Public Law 99–508, provided as follows:

No order entered under this section may authorize or approve the interception of any wire, oral, or electronic communication for any period longer than is necessary to achieve the objective of the authorization, *nor in any event longer*

*than thirty days. Such thirty-day period begins on the earlier of the day* on which the investigative or law enforcement officer *first begins* to conduct an interception under the order *or ten days* after the order is *entered.*

\* \* \* \* \* \*

Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, *or in any event in thirty days.*

(emphasis added).

The application, a copy of which is attached, and the proposed order, also attached, both describe the duration of the interception as follows:

Such interception shall not automatically terminate when the type of communication described above in paragraph (b) has first been obtained but *shall continue until communications are intercepted which reveal the manner* in which Eli David Kirkland ..., and other[s] as yet unknown *participate* in receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule II narcotic controlled substance, marijuana, a Schedule I controlled substance, and other controlled substances, using a communication facility to facilitate offenses involving controlled substances, and conspiracy to do same, *and which reveal the identities* of their confederates, *their places of operation,* and the *nature of the conspiracy* involved therein, *or for a period of thirty days from the day on which law enforcement officers first begin interception or ten days from the date of this order, whichever day is earlier.*

PROVIDING THAT, this authorization to intercept wire communications shall be executed as soon as practical after signing of this order and shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under Chapter 119

of Title 18, United States Code, and *must terminate upon attainment of the authorized objective, or, in any event, at the end of thirty days from the day on which a law enforcement officer first begins an interception* under this order *or ten days after the date of this order, whichever day is earlier.*

Pursuant to 18 U.S.C. § 2518(6), the proposed order required a report to the court every seven days following the date of the order. The proposed order, without being changed in any way, was signed by Judge Fitzpatrick.

The required reports were dutifully prepared by the government; they were presented to, read and considered by Judge Fitzpatrick on each of the following dates: August 8, 1988; August 16, 1988; August 23, 1988; and September 2, 1988. The August 8 report advised the court both of written instructions given to participating law enforcement officers and of the commencement of the interception on August 1, 1988.

The August 16 report advised Judge Fitzpatrick of interceptions occurring through 8:00 a.m. on August 9. In similar fashion, the August 23 report advised the judge of interceptions occurring through August 15. The September 2 report advised Judge Fitzpatrick of interceptions occurring through 9:23 a.m. on August 26, 1988. The monitoring terminated on August 26.

On October 25, 1988, the court was presented with a list of interceptees, as a result of which the court ordered a § 2518(8)(d) inventory to be served upon those persons.

From listening to telephone conversations in which defendant Eli David Kirkland, also known as "Butch," was the answering party, the participating officers, including in particular Captain Scotty Shepherd of the Bibb County Sheriff's Department, concluded that some unidentified persons were telephoning Northside Seafood and Beef, speaking with Butch and inquiring about or ordering contraband by using the word "shrimp." Government Exhibit 3 is a composite tape recording of those con-

versations, and Government Exhibit 4 is a transcript of the composite tape recording. Captain Shepherd testified that, in some conversations, unidentified male voices apparently known by Butch called Northside Seafood and Beef, inquired about shrimp, and were advised by Butch that none was available. During other contemporaneous conversations, individuals inquiring about the availability of shrimp were advised by Butch not only of the availability of shrimp but also of the shrimp's size and price. Those inconsistencies, in conjunction with other statements made during the overheard conversations, caused Captain Shepherd as of August 5 to conclude that the word "shrimp" was being used by defendant Kirkland as a code for contraband or drugs, thus causing Captain Shepherd to pay particular attention to calls concerning the availability of shrimp.

After listening to further calls about shrimp, Captain Shepherd on Friday, August 12, at 3:42 p.m., intercepted and listened to a telephone conversation between an unidentified male and Butch in which Butch agreed to bring a couple of pounds of recently available "big old shrimp" to the caller on Pio Nono Avenue. Pio Nono is a considerable driving distance from the Northside Seafood and Beef establishment. Captain Shepherd concluded that Butch was about to leave Northside Seafood and Beef to make a delivery of drugs. Based upon this conclusion, Captain Shepherd instructed other officers to follow and stop Butch.

Pursuant to Captain Shepherd's instructions, other officers followed Butch and subsequently stopped the automobile that he was driving. Butch got out, and, upon being asked, immediately consented to a search of the vehicle. While officers were searching the car, Officer Allen arrived. Officer Allen asked the other officers if Butch had been "patted down." Upon discovering that he had not been "patted down," he instructed another officer to do so. Suspects are routinely patted down to protect against the possibility of concealed weapons—pistols, knives or other items— that could be used to harm officers. The officer who patted defendant Kirkland down felt something hard in one of the defendant's socks. He pulled the hard object out. The defendant then advised that the object was a one-ounce package of cocaine and voluntarily reached into his other sock and produced another one-ounce package of cocaine.

On October 5, 1988, defendant Eli David Kirkland, also known as "Butch," was indicted both on one count of knowingly and intentionally possessing cocaine with the intent to distribute it in violation of 21 U.S.C. § 841 and on one count of knowingly and intentionally using a telephone to facilitate the commission of count one in violation of 21 U.S.C. § 843(b). After pleading not guilty on October 11, and after filing pretrial motions which included a motion to suppress, defendant Kirkland, pursuant to Rule 23(a) of the Federal Rules of Criminal Procedure, waived in writing a jury trial. This waiver occurred with the approval of the court and the consent of the government.

On Monday, January 23, 1989, a non-jury trial was conducted in this court. The trial proceeded with the understanding that the defendant's motion to suppress was to be heard and decided at the same time that the question of defendant's guilt or innocence was heard and decided.

The government's witnesses testified to the already recited facts. The defendant elected not to testify; nor did he present other evidence. The evidence heard being more than sufficient to establish the defendant's guilt beyond a reasonable doubt, a finding of guilty on both counts is demanded and will be entered unless defendant's motion to suppress the major portion of that evidence is granted.

Defendant's motion to suppress, filed on October 31, 1988, alleges that both the search of the defendant and the seizure of the two ounces of cocaine were conducted absent a search warrant. In addition, defendant alleges that the search and seizure were initiated without probable cause. Finally, defendant contends that the search was neither pursuant to a lawful arrest nor in any other manner justifiable or legal.

On January 23, 1989, that motion was amended to allege that the intercepted telephone calls which allegedly gave officers probable cause to stop and search defendant Kirkland were intercepted after the July 29, 1988, order had by its own terms expired. Thus, defendant contends the communications were intercepted in violation of the wire interception laws of the United States. Defendant argues, pursuant to 18 U.S.C. § 2515,[1] that neither the communication nor the cocaine may be received in evidence. Absent all of the evidence that cannot thus be received, defendant contends he must be found not guilty. The government vigorously contends that there is no basis for the motion to be granted.

Defendant's particular contention is that the July 29, 1988, order signed by Judge Fitzpatrick expired "ten days from the date of this order" because of the words "whichever day is earlier," contained therein. The relevant portion of the court order reads as follows:

> Such interception shall not automatically terminate when the type of communication described above in paragraph (b) has first been obtained but *shall continue until* communications are intercepted which reveal the manner in which Eli David Kirkland ..., and other[s] as yet unknown participate in [federal drug crimes], and which reveal the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, *or* for a period of *thirty days from the day on which* law enforcement officers *first begin interception or ten days from the date of this order, whichever day is earlier.*
>
> PROVIDING THAT, this authorization to intercept wire communications shall be executed as soon as practical after signing of this order and shall be conducted in such a way as to minimize the interception of communications not otherwise

subject to interception under Chapter 119 of Title 18, United States Code, and *must terminate upon attainment* of the authorized objective, *or,* in any event, *at the end of thirty days* from the day on which a law enforcement officer first begins an interception under this order *or ten days after the date of this order, whichever day is earlier.*

(emphasis added).

Assuming that 18 U.S.C. § 2515 does not prohibit the admission of all evidence intercepted more than ten days after the July 29, 1988, order was entered, this court is satisfied that the intercepted phone calls—Government Exhibits 3 and 4—afforded an abundance of probable cause to believe that defendant Kirkland on August 12, 1988, was about to leave the Northside Seafood and Beef in an automobile to make a delivery of illegal drugs to an unidentified male on Pio Nono Avenue in Macon. *See Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (given all of the circumstances there must be a fair probability that contraband or evidence of a crime will be found in a particular place.) Clearly, the officers did not have sufficient time to obtain an arrest or search warrant. Therefore, acting in a manner which the circumstances demanded, the officers stopped the defendant's automobile, searched both defendant and his car, and found two ounces of cocaine.

### Discussion

Defendant Kirkland essentially contends that the packages of cocaine discovered upon defendant's person should be suppressed in that those packages constitute evidence derived from communications that were unlawfully intercepted. This evidence, defendant contends, was obtained by the exploitation of information gathered by law enforcement officers who were allegedly engaging in unlawful conduct, *i.e.,* eavesdropping upon certain telephone com-

---

**1.** 18 U.S.C. § 2515 reads as follows:

Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or

before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the United States, a State, or a political subdivision thereof if the disclosure of that information would be in violation of this chapter.

munications beyond the time period authorized by the judicial order. As such, defendant raises two interrelated points. The first question concerns the expiration date of the order. If the order did in fact expire ten days after its issuance, then defendant's motion to suppress should be granted. However, if this court determines that the order did not terminate, then the court must determine whether the presence of an ambiguity in the order constitutes a sufficiently important violation of the statutory scheme to warrant suppression of the communications and the cocaine.

Though defendant failed to cite the applicable sections, the court notes that the wiretapping statute prohibits the introduction into evidence of both the contents of any wire or oral communication and any evidence derived therefrom if the introduction of that information and/or evidence would be violative of the statute. 18 U.S.C. § 2515. The circumstances which trigger suppression under section 2515 are enumerated in section 2518(10)(a), which reads in pertinent part as follows:

> Any aggrieved person in any trial, hearing, or proceeding ... may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom, on the grounds that—
>
> (i) the communication was unlawfully intercepted;
>
> (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or
>
> (iii) the interception was not made in conformity with the order of authorization or approval.

18 U.S.C. § 2518(10)(a). Based upon defendant's argument that the communications were intercepted after the alleged expiration of an otherwise valid order, it appears that section 2518(10)(a)(i) is implicated.[2]

As a factual matter, however, this court determines that defendant Kirkland's position regarding the expiration of the authorization is without merit. First, based entirely upon a reading of both the relevant statutory provisions and the order in question, this court finds it clear that the language contained in the order is an inadvertent juxtaposition of the statutory language and that the intent of the order was to limit the wiretap to the statutorily prescribed thirty days, with the period to begin no later than ten days from the date of the order. The thirty-day period could begin earlier, however, if the law enforcement officers involved actually instituted the interception at an earlier time.

In support, the court notes that to include the phrase "for a period of thirty days from the day on which law enforcement officers first begin interception" is meaningless if the court accepts defendant's position that the maximum interception period authorized is "ten days from the date of this order...." Ten days from the date of the authorizing order will in nearly all cases expire prior to a period of thirty days from the day on which law enforcement officers first begin interception.[3]

Further, the court notes that portion of the order which, in compliance with 18 U.S. C. § 2518(6), required the government to file reports to Judge Fitzpatrick "every seven days following the date of this order...." First, if the order was to remain effective for only ten days, the word "every" is superfluous. Second, the government, in compliance with the order, submitted four reports. Those reports were read and signed by Judge Fitzpatrick. Obviously, Judge Fitzpatrick would have questioned the continuation of the wiretap if the order was meant to expire on the tenth day. No evidence indicates that Judge Fitzpatrick questioned the propriety

---

**2.** While section 2518(10)(a)(iii) arguably applies, the gist of that provision appears to involve conduct which does not conform to an *existing* order. Defendant herein contends that the order had, by its own terms, expired. Thus, defendant argues that the interception of communications after that expiration constitutes an unlawful search and seizure.

**3.** The only possible situation in which such would not be true is the situation in which the authorization order is meant to apply retroactively. That situation is not before this court.

of the wiretap as it continued through August.

■ Finally, the court has received the affidavit of Assistant United States Attorney Miriam Duke, the individual who prepared the order in question. While such extrinsic evidence is normally not admissible, the trial court is not bound by the Federal Rules of Evidence in hearing motions to suppress. *United States v. De La Fuente*, 548 F.2d 528, 532–33 (5th Cir. 1977),[4] *cert. denied*, 431 U.S. 932, 97 S.Ct. 2640, 53 L.Ed.2d 249 (1977); *see United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Assistant United States Attorney Duke's affidavit reads in relevant part as follows:

> At all times it was the intent of the Government that the Order for authorization of interception of wire communications extend for a period of thirty days. At all times it was the understanding of the Government and its Agents that the Order as signed by the District Court allowed the interception to continue for the period of thirty days or the time necessary to achieve the objective of the authorization, whichever was shorter. At no time was it intended that the authorization to intercept wire communications expire after only ten days from the date of the Order.

The government's understanding of the order, as explained in Ms. Duke's affidavit, comports with what this court determines to be the only reasonable reading of that portion of the order describing the duration of the wiretap. Therefore, the court holds that judicial authorization of the wiretap did not expire on the tenth day following the issuance of the order and that the communications intercepted thereafter were done so properly and in compliance with the order.

However, this court's determination that both the communications intercepted and the evidence derived therefrom were obtained pursuant to a valid authorization order and therefore not unlawfully intercepted does not complete the inquiry. It

remains for this court to consider whether the identified ambiguity in the court order describing the duration of the wiretap in itself creates a violation so central to the statutory scheme that any evidence derived therefrom must be suppressed.

The Supreme Court has held that not "every failure to comply fully with any requirement provided in Title III would render the interception of wire or oral communications 'unlawful.'" *United States v. Chavez*, 416 U.S. 562, 574–75, 94 S.Ct. 1849, 1856, 40 L.Ed.2d 380, 392 (1974). "To the contrary, suppression is required only for a 'failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.'" *United States v. Donovan*, 429 U.S. 413, 433–34, 97 S.Ct. 658, 671, 50 L.Ed.2d 652, 671 (1977), quoting *United States v. Giordano*, 416 U.S. 505, 527, 94 S.Ct. 1820, 1832, 40 L.Ed.2d 341, 360 (1974).

In *Giordano*, the Supreme Court held that Congress did not intend for any individuals other than the Attorney General or a specially designated Assistant Attorney General to authorize wiretap applications. "The mature judgment of a particular, responsible Department of Justice official is interposed as a critical precondition to any judicial order." *Giordano*, 416 U.S. at 515–16, 94 S.Ct. at 1827, 40 L.Ed.2d at 353. "[T]he provision for pre-application approval was intended to play a central role in the statutory scheme" and "suppression must follow when it is shown that this statutory requirement has been ignored." *Id.* at 528, 94 S.Ct. at 1832, 40 L.Ed.2d at 360.

In *Chavez*, the Supreme Court held that, when it is clearly established that authorization was given by an authorized official, the misidentification of the authorizing Department of Justice official both in the application seeking and in the order authorizing the interception will not render interceptions conducted thereunder unlawful within the meaning of section 2518(10)(a)(i).

---

**4.** This case, like all cases decided by the old Fifth Circuit prior to October 1, 1981, is binding precedent upon this court. *See Bonner v. Prichard*, 661 F.2d 1206 (11th Cir.1981).

*Chavez,* 416 U.S. at 579, 94 S.Ct. at 1858, 40 L.Ed.2d at 394–95. Misidentification is not "in any sense the omission of a requirement that must be satisfied if wiretapping or electronic surveillance is to be lawful under Title III." *Id.* at 573, 94 S.Ct. at 1855, 40 L.Ed.2d at 391. "[T]he misidentification of the officer authorizing the wiretap application did not affect the fulfillment of any of the reviewing or approval functions required by Congress...." *Id.* at 575, 94 S.Ct. at 1856, 40 L.Ed.2d at 392.

In *Donovan,* the Supreme Court determined that pursuant to the statutory scheme "a wiretap application must name an individual if the government has probable cause to believe that the individual is engaged in the criminal activity under investigation and expects to intercept the individual's conversations over the target telephone." *Donovan,* 429 U.S. at 428, 97 S.Ct. at 668, 50 L.Ed.2d at 668. The Court further held that the government has an obligation to supply the judicial officer with certain information regarding all of those individuals whose conversations have been intercepted. Only then can the judge make an informed decision regarding the notice requirements prescribed by 18 U.S.C. § 2518(8)(d). *Id.* at 428–432, 97 S.Ct. at 668–670, 50 L.Ed.2d at 668–670. However, the Court refused to suppress evidence derived from the wiretaps in question for the following reasons: (1) the identification of all of those individuals likely to be overheard in incriminating conversations does not play a substantial role with respect to judicial authorization of intercept orders and thus does not impose a limitation on intercept procedures; and (2) post-intercept notice was designed to assure the community that the wiretap technique is reasonably employed, and such notice was not intended to serve as an independent restraint on resort to the wiretap procedure.

*Id.* at 435–439, 97 S.Ct. at 671–674, 50 L.Ed.2d at 672–675.

 The message of the above three Supreme Court cases is that violations of 18 U.S.C. § 2510, *et. seq.,* which neither directly nor substantially implement Congress' expressed desire to restrain law enforcement's resort to or judicial authorization of the wiretap procedures are not violations which demand a finding that communications intercepted thereunder were unlawfully intercepted and therefore must be suppressed. The technical violation at issue in the case *sub judice,* the existence of an ambiguity in the judicial order, is not one which has any bearing upon either the government's decision to seek wiretap authorization or a judge's decision to authorize a requested wiretap.[5]

In *United States v. Baynes,* 400 F.Supp. 285 (E.D.Pa.1975), *aff'd,* 517 F.2d 1399 (3rd Cir.1975), the court stated as follows: "[t]he technical defect of an omission of the language prescribed by § 2518(5), like that of a misidentification of the officer authorizing a wiretap application, is not sufficient to render the interception of these communications 'unlawful' and to warrant suppression under § 2518(10)(a)(i)." *Baynes,* 400 F.Supp. at 307 n. 37. Relying upon the legislative history of section 2518(5), the court said that "the *requirement of inserting language* regarding minimization and execution as soon as practicable does not play a central role in the statutory scheme to limit and control electronic surveillance," nor does the requirement " 'directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device.' " *Id.* at 307 n. 37 (emphasis in original), quoting *Giordano, supra.* This court agrees with the *Baynes* court and notes

---

5. In *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978), the Supreme Court noted that the word "not" was inadvertently omitted in the judicial order authorizing a wiretap. *Scott* at 131 n. 2, 98 S.Ct. at 1720 n. 2, 56 L.Ed.2d at 176 n. 2. The court did not attach any significance to this omission. Though the Supreme Court's decision in *Scott* involved the

intercepting agents' alleged failure to minimize the interception of certain telephone conversations and not the absence or incompleteness of the minimization provision itself, this court finds the Supreme Court's footnote indicative of the manner in which that court might rule on an ambiguity such as the one under consideration by this court.

that the violations in *Baynes*—the complete omission of the language allegedly ambiguous in the case *sub judice*—constitutes a violation more egregious than the one under consideration here.

In *United States v. Rosario*, 820 F.2d 584 (2nd Cir.1987), the appellants therein contended that law enforcement officials exceeded their authority by conducting twenty-four hour wiretaps pursuant to an order authorizing wiretaps during the period identified as "12:00 a.m. to 12:00 p.m." The court disagreed, stating as follows:

> It is clear to us that the use of the ambiguous phrase "12:00 a.m. to 12:00 p.m." was a mere clerical error insufficient to warrant suppression. The wiretap application and supporting affidavits unequivocally establish that 24–hour interception of appellants' telephone conversations was requested by the prosecutor who sought the wiretaps. The panel of state judges that authorized the wiretaps have since stated that they intended to authorize 24–hour interception.

*Id.* at 585.

This court agrees with *Rosario, supra,* and *Baynes, supra,* and determines that the use of the ambiguous phrase is a mere clerical error which is insufficient to warrant suppression. *See also, United States v. Todisco*, 667 F.2d 255, 259 (2nd Cir.1981) (district court's finding of fact that a date on the order authorizing the wiretap was a ministerial error and therefore insignificant was not a clearly erroneous finding), *cert. denied*, 455 U.S. 906, 102 S.Ct. 1250, 1251, 71 L.Ed.2d 444 (1982).

In conclusion, this court determines that Judge Fitzpatrick's order, while somewhat ambiguous, clearly authorized the wiretap of the telephones in question for a period beyond the tenth day from its issuance. Further, the court determines that the mere existence of an ambiguity in the language required by section 2518(5) is not a violation so central to the statutory scheme as to warrant the suppression of either communications intercepted or evidence obtained pursuant to an order containing such an ambiguity. Thus, defendant's motion to suppress is DENIED.

In accordance with this court's determination that defendant's guilt was clearly established during his non-jury trial, and in light of the court's decision to deny defendant's motion to suppress, defendant is hereby ADJUDGED GUILTY AS CHARGED.

SO ORDERED.

## APPENDIX

### Attachment 1

In the United States District Court

for the Middle District of Georgia

Macon Division

Misc. Cr. No. 88–10 MAC

Filed July 29, 1988

In the Matter of the Application of the United States of America for an Order Authorizing the Interception of Wire Communications

### APPLICATION

MIRIAM WANSLEY DUKE, an attorney of the United States Department of Justice, being duly sworn, states:

1. She is an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an attorney authorized by law to prosecute or participate in the prosecution of offenses enumerated in Section 2516 of Title 18, United States Code.

2. Pursuant to Section 2516 of Title 18, United States Code, the Assistant Attorney General of the Criminal Division, United States Department of Justice, having been specially designated by the Attorney General pursuant to Order Number 1162–86 of December 12, 1986, has approved this application for an order authorizing the interception of wire communications. Attached to this application as Attachment 1 is a copy of Order Number 1162–86 of December 12, 1986, specially designating the Assistant Attorney General of the Criminal Division to approve applications for court orders authorizing interception of wire communications.

Also attached as Attachment 2 is a copy of the Assistant Attorney General's memorandum of authorization, approving this application.

3. This application seeks authorization to intercept wire communications of Percy Donald Livingston, Eli David Kirkland, and others as yet unknown, concerning offenses enumerated in Section 2516 of Title 18, United States Code, that is—offenses involving receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule II narcotic drug, marijuana, a Schedule I controlled substance, and other controlled substances, and conspiracy to do same, in violation of Title 21, United States Code, Sections 841, and 846, which offenses have been and are now being committed by Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and other persons as yet unknown.

4. She has discussed all the circumstances of the above offenses with Special Agent Anthony B. Cooper of the Columbus, Georgia, office of the Drug Enforcement Administration, who has directed and conducted the investigation herein, and has examined the affidavit of Special Agent Anthony B. Cooper (attached to this application as Attachment 3 and incorporated by references herein) which alleges the facts therein in order to show that:

a. There is probable cause to believe that Percy Donald Livingston, Eli David Kirkland, and others as yet unknown have committed and are committing offenses involving receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule II narcotic drug, marijuana, a Schedule I controlled substance, and other controlled substances, and conspiracy to do same, in violation of Title 21, United States Code, Sections 841, and 846;

b. There is probable cause to believe that particular wire communications of Percy Donald Livingston, Eli David Kirkland, and others as yet unknown, concerning these offenses will be obtained through the interception for which authorization is herewith applied. In particular, these wire communications will concern the distribution of large quantities of cocaine hydrochloride and marijuana in the Middle District of Georgia area; the storage of these drugs at safe locations as yet unknown, locations where drugs will be delivered, arrangements with distributors for delivery of and payment for these drugs, the receipt of funds derived from their sales, arrangements for picking up proceeds from the illegal enterprises; subsequent dispersement and investment of these proceeds; use of countersurveillance to avoid police detection; and other wire communications which are beneficial to the continuation of their illegal actions. In addition, the communications are expected to constitute admissible evidence of the commission of the offenses;

c. The attached affidavit contains a full and complete statement explaining why normal investigative procedures either have been tried and have failed or reasonably appear unlikely to succeed if continued, or reasonably appear unlikely to succeed if tried;

d. There is probable cause to believe that the telephones subscribed by Percy Donald Livingston, located at 2481 Kingsley Drive, Apt. A, Macon, Georgia, and Northside Seafood and Beef, located at 3327 Northside Drive, Macon, Georgia, and carrying numbers (912) 742-3810 and (912) 471-1103, respectively, have been used and are being used by Percy Donald Livingston, Eli David Kirkland, and others as yet unknown, in connection with the commission of the above-described offenses.

5. No previous application to any judge for authorization to intercept, or for approval of interception of, wire or electronic communications involving any of the same persons, facilities, or places specified in this application are known to the individuals authorizing and making this application.

WHEREFORE, your Affiant believes that probable cause exists to believe that Percy Donald Livingston, Eli David Kirkland, and others as yet unknown are engaged in the commission of offenses involving receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule

II narcotic controlled substance, marijuana, a Schedule I controlled substance, and other controlled substances, using a communication facility to facilitate said violations, and conspiracy to do same, in violation of Title 21, United States Code, Sections 841, 843(b), and 846; that Percy Donald Livingston, Eli David Kirkland, and others as yet unknown have used, and are using the telephones subscribed to by Percy Donald Livingston, located at 2481 Kingsley Drive, Apt. A, Macon, Georgia, bearing number (912) 742-3810, and telephone located at Northside Seafood and Beef, 3327 Northside Drive, Macon, Georgia, bearing number (912) 471-1103, in connection with the commission of the above-described offenses; that communications of Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and others as yet unknown concerning these offenses will be intercepted to and from the above-described telephones; and that normal investigative procedures appear unlikely to succeed.

On the basis of the allegations contained in this application and on the basis of the affidavit of Special Agent Anthony B. Cooper, attached hereto, Affiant requests this Court to issue an order, pursuant to the power conferred on it by Section 2518 of Title 18, United States Code, authorizing the Drug Enforcement Administration and the Federal Bureau of Investigation to intercept wire communications to and from the above-described telephones until communications are intercepted which reveal the manner in which Percy Donald Livingston, Eli David Kirkland, and others as yet unknown participate in receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule II narcotic controlled substance, marijuana, a Schedule I controlled substance, and other controlled substances, and conspiracy to do same, and which reveal the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty days from the day that law enforcement officers first begin interception or ten days from the date of the Court's order, whichever is earlier.

It is further requested that this Court issue an order pursuant to Section 2518(4)(e) of Title 18, United States Code, directing that the Southern Bell Telephone and Telegraph Company, a communication service provider as defined in Section 2510(15) of Title 18, United States Code, shall furnish the applicant forthwith all information, facilities, and technical assistance necessary to accomplish the interception unobtrusively and with a minimum of interference with the services that such a communication provider is according the person whose communications are to be intercepted, the reasonable expenses of furnishing of such facilities or technical assistance by the Southern Bell Telephone and Telegraph Company to be compensated for by the applicant.

/s/ Miriam Wansley Duke
MIRIAM WANSLEY DUKE
ASSISTANT UNITED STATES ATTORNEY

Sworn to and subscribed before me this 29 day of July, 1988.

/s/ Duross Fitzpatrick
DUROSS FITZPATRICK
UNITED STATES DISTRICT JUDGE

---

## MEMORANDUM

Subject

Authorization for Interception Order Application

Date

July 27, 1988

To

Frederick D. Hess, Director

Office of Enforcement Operations

Criminal Division

From

Edward S.G. Dennis, Jr.

Acting Assistant Attorney General

Criminal Division

This is with regard to your recommendation that I, an appropriately designated of-

ficial of the Criminal Division, authorize an application to a federal judge of competent jurisdiction for an order under Title 18, United States Code, Section 2518, authorizing the interception of wire communications for a thirty (30) day period to and from the telephones bearing the numbers (912) 471–1103, subscribed to by Percy Donald Livingston and located at Northside Seafood and Beef, 3327 Northside Drive, Macon, Georgia; and (912) 742–3810, subscribed to by Percy Donald Livingston and located in his residence at 2481 Kingsley Drive, Apartment A, Macon, Georgia, in connection with an investigation into possible violations of Title 21, United States Code, Sections 841, 843, and 846, by Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Theresa Kirkland, Johnny Carden, Marvin Earl Jackson, Billy Doolittle, Donald Livingston, and others as yet unknown.

By virtue of the authority vested in him by Section 2516 of Title 18, United States Code, the Attorney General of the United States has by Order Number 1162–86, dated December 12, 1986, designated specific officials in the Criminal Division to authorize applications for court orders authorizing the interception of wire or oral communications. As a duly designated official in the Criminal Division, this power is exercisable by me. WHEREFORE, acting under this delegated power, I hereby authorize the above-described application to be made by any investigative or law enforcement officer of the United States as defined in Section 2510(7) of Title 18, United States Code. The authorization given is intended to apply not only to the target telephone numbers listed above, but to any changed telephone number subsequently assigned to the same cable, pair, and binding post utilized by the target telephones within the thirty (30) day period.

Edward S.G. Dennis, Jr.
Acting Assistant Attorney General
Criminal Division

7–27–88
Date

By: /s/ John C. Keeney
John C. Keeney
Deputy Assistant Attorney General
Criminal Division

*Attachment 2*
Office of the Attorney General

Washington, D.C. 20530

SPECIAL DESIGNATION OF THE ASSISTANT, ACTING ASSISTANT, AND ANY DEPUTY ASSISTANT ATTORNEY GENERAL OF THE CRIMINAL DIVISION, TO AUTHORIZE APPLICATIONS FOR COURT ORDERS FOR INTERCEPTION OF WIRE OR ORAL COMMUNICATIONS UNDER CHAPTER 119,

TITLE 18, UNITED STATES CODE

ORDER No. 1162–86

By virtue of the authority vested in me by 28 U.S.C. 509, 510, 5 U.S.C. 301, and 18 U.S.C. 2516(1), and in full recognition that 18 U.S.C. 2516(1) empowers the Attorney General, Deputy Attorney General, and Associate Attorney General to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications, I hereby specially designate the Assistant Attorney General in charge of the Criminal Division, any Acting Assistant Attorney General in charge of the Criminal Division, and any Deputy Assistant Attorney General of the Criminal Division, to exercise the power conferred by Section 2516(1) of Title 18, United States Code, to authorize applications to a Federal judge of competent jurisdiction for orders authorizing the interception of wire or oral communications by the Federal Bureau of Investigation or a Federal agency having responsibility for the investigation of the offense as to which such application is made, when such interception may provide evidence of any of the offenses specified in Section 2516 of Title 18, United States Code.

Order No. 1088–85 of March 28, 1985 is revoked.

Date: Dec. 12, 1986.

/s/ <u>Edwin Meese III</u>

EDWIN MEESE III
Attorney General

In the United States District Court
for the Middle District of Georgia
Macon Division

Misc. Cr. No. 88–10 MAC

Filed July 29, 1988

In the Matter of the Application of the United States of America for an Order Authorizing the Interception of Wire Communications

### ORDER AUTHORIZING INTERCEPTION OF WIRE COMMUNICATIONS

Application under oath having been made before me by Miriam Wansley Duke, an "investigative or law enforcement officer" as defined in Section 2510 of Title 18, United States Code, for an order authorizing the interception of wire communications pursuant to Section 2518 of Title 18, United States Code, and full consideration having been given to the matters set forth therin, the Court finds:

a. There is probable cause to believe that Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and others as yet unknown have committed and are committing offenses involving receiving, concealing, buying, and distributing cocaine hydrochloride, marijuana, and other controlled substances, in violation of Title 21, United States Code, Sections 841, and 846.

b. There is probable cause to believe that particular wire communications concerning these offenses will be obtained through the interception for which authorization is herewith applied. In particular, these wire communications will concern the distribution of large quantities of cocaine hydrochloride, marijuana, and other controlled substances, in the Middle District of Georgia area; the storage of these drugs at safe locations as yet unknown, locations where drugs will be delivered, arrangements with distributors for delivery of and payment for these drugs, the receipt of funds derived from their sales, arrangements for picking up proceeds from the illegal enterprise; subsequent dispersement and investment of these proceeds; use of countersurveillance to avoid police detection; and other wire communications which are beneficial to the continuation of their illegal actions. In addition, the communications are expected to constitute admissable evidence of the commission of the offenses.

c. Normal investigative procedures either have been tried without success and reasonably appear unlikely to succeed if continued or reasonably appear unlikely to succeed if tried.

d. There is probable cause to believe that the telephone numbers subscribed to by Percy Donald Livingston and located in premises at 2481 Kingsley Drive, Apt. A, Macon, Georgia bearing number (912) 742–3810, and telephone located at Northside Seafood and Beef, 3327 Northside Drive, Macon, Georgia, bearing number (912) 471–1103, have been used and are being used by Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and others as yet unknown in connection with the commission of the above-stated offenses.

WHEREFORE, it is hereby ordered that the Drug Enforcement Administration and the Federal Bureau of Investigation are authorized, pursuant to application authorized by the Acting Assistant Attorney General of the Criminal Division, the Honorable Edward S.G. Dennis, Jr., pursuant to the power delegated to the Assistant Attorney General of the Criminal Division by special designation of the Attorney General under the authority vested in him by Section 2516 of Title 18, United States Code: to intercept wire communications of Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and others as yet unknown concerning the above-described offenses to and from the telephones subscribed to by Percy Donald Livingston, located at 2481 Kingsley Drive, Apt. A, Macon, Georgia, bearing telephone number

**1584**

(912) 742-3810, and at Northside Seafood and Beef, located at 3327 Northside Drive, Macon, Georgia, bearing telephone number (912) 471-1103. Such interception shall not automatically terminate when the type of communication described above in paragraph (b) has first been obtained but shall continue until communications are intercepted which reveal the manner in which Percy Donald Livingston, Eli David Kirkland, Charlotte Ethridge, Marvin Earl Jackson, Sr., Martin Sterling Hammock, Carl Mallard, Bobby Peacock, and other as yet unknown participate in receiving, concealing, buying, and distributing cocaine hydrochloride, a Schedule II narcotic controlled substance, marijuana, a Schedule I controlled substance, and other controlled substances, using a communication facility to facilitate offenses involving controlled substances, and conspiracy to do same, and which reveal the identities of their confederates, their places of operation, and the nature of the conspiracy involved therein, or for a period of thirty days from the day on which law enforcement officers first begin interception or ten days from the date of this order, whichever day is earlier.

PROVIDING THAT, this authorization to intercept wire communications shall be executed as soon as practical after signing of this order and shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under Chapter 119 of Title 18, United States Code, and must terminate upon attainment of the authorized objective, or, in any event, at the end of thirty days from the day on which a law enforcement officer first begins an interception under this order or ten days after the date of this order, whichever day is earlier.

PROVIDING ALSO, that Assistant United States Attorney Miriam Wansley Duke, shall provide the Court with a report every seven days following the date of this order showing what progress has been made toward achievement of the authorized objective and the need for continued interception; and,

IT IS FURTHER ORDERED that this order and the Application therefore be placed in the custody of the Clerk of this Court, who shall provide the United States Attorney with sufficient certified copies thereof and shall keep this order and the Application under seal until further order of this Court.

/s/ Duross Fitzpatrick
DUROSS FITZPATRICK
UNITED STATES DISTRICT JUDGE