**UNITED STATES of America,**

v.

**Marc Garret ROSENTHAL.**

**Criminal No. B–11–743.**

United States District Court,
S.D. Texas,
Brownsville Division.

Signed Jan. 23, 2013.

Oscar Ponce, U.S. Attorney's Office, Brownsville, TX, Michael J. Wynne, McDermott Will & Emery, Houston, TX, Gregory J. Surovic, U.S. Attorney's Office, San Antonio, TX, for Plaintiff United States of America.

David L. Botsford, Attorney at Law, Austin, TX, John Patrick Smith, Houston, TX, Paul G. Kratzig, Paul G. Kratzig Associates, Corpus Christi, TX, for Defendant Marc Garrett Rosenthal.

## ORDER

ANDREW S. HANEN, District Judge.

On December 18, 2012, the Court held a hearing on Defendant's Motion to Disclose or Unseal Applications, Orders and Inventory of Title III Intercepts, and Motion for Evidentiary Hearing, and Motion to Suppress Title III Intercepts [Doc. No. 144] and Defendant's Supplemental [sic] to Motion to Suppress Evidence Derived from Title III Intercepts and Motion for *Franks* Hearing, Dismissal of Indictment Tainted By Wrongful Intercepts and Request for Clarification of Court Order in Doc. No. 201 [Doc. No. 205]. The Court ruled on the various grounds for suppression proffered in Defendant's motion during the hearing, as detailed below. In this order, the Court additionally rules on further grounds, on which Defendant also rests his argument for suppression, that were either taken under advisement or were included in Defendant's written motion but not advocated during the hearing. Lastly, the Court addressed on December 18, 2012

Defendant's request for Clarification of the Court's prior ruling on October 26, 2012 and **GRANTED** Defendant's renewed Motion to Change Venue for the reasons set forth at the conclusion of this order.

## I. Motion to Suppress Title III Intercepts

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 governs the interception of wire and oral communications. 18 U.S.C. §§ 2510–2522. The statute provides that the contents of any wire and oral interception, as well as evidence derived therefrom, must be suppressed in any trial if disclosure of the evidence in question would violate Title III. 18 U.S.C. § 2515. The specific grounds for suppression are outlined in 18 U.S.C. § 2518(10)(a), which provides in pertinent part that suppression is mandated when: "(i) the communication was unlawfully intercepted; (ii) the order of authorization or approval under which it was intercepted is insufficient on its face; or (iii) the interception was not made in conformity with the order of authorization or approval." *See also United States v. Donovan,* 429 U.S. 413, 432, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). Defendant has filed a motion to suppress asserting various violations of Title III and requesting this Court to suppress all evidence related to the Title III intercepts at issue in this case.

The Court preliminarily notes that Defendant's motion, while asserting numerous grounds upon which this Court may suppress the evidence, failed almost entirely to identify the specific intercept application(s) to which various alleged violations pertained. In order for the Court to rule on Defendant's objections, and especially in light of the plethora of applications potentially relevant,[1] the Court instructed Defendant during the hearing to specifically identify the intercept application(s) at issue for each objection. Per Counsel's representations, the Court ruled on the objections as so limited in open court.

### A. Standing

■ Title III provides that any "aggrieved person … may move to suppress the contents of any wire or oral communication intercepted pursuant to this chapter, or evidence derived therefrom…." 18 U.S.C. § 2518(10)(a). The statute further defines "aggrieved person" as "a person who was a party to any intercepted wire, oral, or electronic communication or a person against whom the interception was directed." 18 U.S.C. § 2510(11). The Government maintained that Rosenthal was only ever intercepted on Target Telephone # 2 and Target Telephone # 5. He was first intercepted on Target Telephone # 2 during the third extension period of the wiretap and was included as a named interceptee on all subsequent applications for extensions pertaining to Target Telephone # 2. He was both a named interceptee for, and intercepted numerous times on Target Telephone # 5. Defendant agreed with the Government's representation and conceded that Rosenthal had standing to challenge only the intercept applications for Target Telephone # 2 from the third extension application onward and for Target Telephone # 5. As

---

1. As detailed in the Government's response [Doc. No. 209], there were five separate wire devices on which communications were intercepted, identified by the Government as "Target Telephones," to which Rosenthal may or may not have been referring in his motion. Additionally, there were ten extensions granted for Target Telephone # 1, eleven extensions granted for Target Telephone # 2, one extension granted for Target Telephone # 3, and four extensions granted for Target Telephone # 4. No extension was ever sought for Target Telephone # 5. [*Id.* at 1–6]. As such, there were thirty-one intercept applications that Defendant could have been referencing in making his numerous objections.

agreed by the parties, the Court finds that Rosenthal's standing is accordingly limited. To the extent that Defendant's motion challenges any applications aside from those aforementioned, this motion is **DENIED**.

## B. Conflict of Interest and *Franks* Hearing

■ Defendant argues that FBI Agent Vela failed to disclose a conflict of interest to the Court, that such failure constituted a material omission without which a finding of probable cause for the intercepts against Rosenthal cannot be made, and that Defendant is entitled to a *Franks* hearing to prove his allegations. The alleged conflict of interest arises from FBI Agent Vela's previous marriage to "a partner in the law firm ... that represented clients where the opposing attorney is Marc Rosenthal." [Sealed Ex. C, Evidence of Conflict of Interest of. Special Agent Vela, Doc. No. 206–3]. Specifically, "the subject civil lawsuit that underlies the basis for conflict of interest disqualification was *Deyanara Tapia v. Union Pacific Railroad,* in Judge Andrew Hanen's court." [*Id.*] According to Defendant this conflict of interest provided FBI Agent Vela with motive to target Rosenthal in the intercept applications, and as such should have been disclosed to the Court. Further, Defendant maintains that had such disclosure been made, no probable cause as to Rosenthal would have been found.

The Court first notes that Defendant's objection applies only to the intercept applications for Target Telephone # 2, as FBI Agent Mark J. Gripka submitted the affidavit for the intercept application for Target Telephone # 5. Second, the *Tapia* case on which Defendant bases his objection concluded in October 2007, and the first application for which Rosenthal has

standing to object was filed on February 15, 2008. The alleged source of the conflict of interest was therefore long resolved before Rosenthal was ever intercepted in the course of the Government's investigation. Further, it was not until the fourth extension intercept application filed on March 14, 2008 that Defendant was first named as a target interceptee. Rosenthal had been intercepted on Target Telephone # 2 in a conversation with Judge Limas on March 5, 2008, in which Rosenthal discussed disposing of Judge Limas' political opponent by securing an indictment against the opponent. [Docket No. 1:07–mc–22, Doc. No. 69 at 7–8]. The Court finds that this conversation, rather than any alleged conflict of interest, is the more likely reason why Rosenthal was added as an interceptee in subsequent applications for Target Telephone # 2. Had there been a conflict of interest, the Court believes Rosenthal would have been named as an interceptee long before, given that FBI Agent Vela submitted the affidavits for the original intercept application filed on November 16, 2007 and the first three extension intercept applications. Lastly, the Court notes that the *Tapia* case was pending in this Court, so the Court was well aware of Agent Vela's ex-wife's involvement with the *Tapia* case, Agent Vela's involvement with the case in question, and their marital relationship at that time. Thus, Agent Vela's alleged failure to disclose the relationship was harmless and did not impact this Court's probable cause finding.

■ As for Defendant's request for a *Franks* hearing, the Court **DENIED** same. To be entitled to a *Franks* hearing, Defendant must show " 'a substantial preliminary showing' that: (1) the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in the warrant affidavit, and (2)

the remaining portion of the affidavit is insufficient to support a finding of probable cause." *United States v. Diaz,* No. 3:08–CR–267–D (05), 2009 WL 348284, at *3 (N.D.Tex. Feb. 11, 2009). Defendant has not presented any evidence of either a knowing false statement or reckless disregard for the truth on the part of Agent Vela, nor any evidence that any of the affidavits are insufficient to support a finding of probable cause. Defendant's sole exhibit supporting the *Franks* hearing request is unsigned, unsworn to and pure speculation [Doc. No. 206–3]. Accordingly, Defendant is not entitled to a *Franks* hearing and the Court **DENIED** the request.

## C. Necessity Showing

 Section 2518 of Title III states in pertinent part that each intercept application must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous[.]" 18 U.S.C. § 2518(1)(c). Colloquially referred to as the "necessity requirement," the purpose of the showing is to "assure that wiretapping is not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Hyde,* 574 F.2d 856, 867 (5th Cir.1978) (internal quotation marks omitted); *United States v. Kahn,* 415 U.S. 143, 153 n. 12, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974). It is not, however, meant to "foreclose electronic surveillance until every other imaginable method of investigation has been unsuccessfully attempted." *United States v. Collins,* 972 F.2d 1385, 1412 (5th Cir.1992) (internal quotation marks omitted). "It is enough if an affidavit explains the prospective or retrospective failure of several investigative techniques that reasonably suggest themselves." *Id.* (quoting *Hyde,* 574

F.2d at 867) (internal quotation marks omitted).

In his written motion, Defendant claimed that the Government's necessity showing was insufficient but once again did not identify the specific intercept application to which the objection pertained. When instructed to clarify his objection, Defendant in open court narrowed it to the initial intercept applications for Target Telephone # 1 and Target Telephone # 2, and to the fourth extension intercept application for Target Telephone # 2. Excerpts of the fourth extension intercept application were, moreover, included in Exhibit B to Defendant's Motion [Ex. B, Excerpts of Applications and Orders that List Marc Rosenthal as a Target for which there is "Probable Cause" to Permit the Wiretapping, Doc. No. 206–2].

To the extent that Defendant's objection referred to the initial application for Target Telephone # 1, the Court **OVERRULED** the objection. Rosenthal was never intercepted on, nor was a target interceptee for, Target Telephone # 1 and accordingly lacks standing. To the extent that Defendant's objection referred to the initial application for Target Telephone # 2, the Court **OVERRULED** it as well. First, Rosenthal was not intercepted on Target Telephone # 2 until the third extension period and was only named as a target interceptee on the fourth extension intercept application onward. As such, Defendant lacked standing to object to the initial application for Target Telephone # 2. Second, the initial application included over seven pages in which Agent Vela detailed the other investigative means that the Government considered and attempted.

Lastly, the Court also **OVERRULED** the objection to the fourth extension intercept application for Target Telephone # 2.

Defendant at first appeared to be arguing that the fourth extension intercept application did not contain sufficient facts to support a probable cause finding as against Rosenthal specifically. When pressed by the Court to answer whether Section 2518 required a probable cause showing for all target interceptees in the application, however, Defendant refused to respond to the Court's inquiry. Instead, Defendant clarified his objection and claimed that the extension application contained an insufficient necessity showing as to Abel Limas. The Court found that there were sufficient facts warranting an extension of the interception as to Limas and **OVERRULED** the objection.[2]

## D. Assertions of Privilege

Rosenthal in his motion also argued that the Government: (a) did not follow the correct procedures in filtering privileged conversations while the interceptions were occurring; and (b) illegally obtained and disclosed privileged material to investigative officers and the grand jury. The Court **OVERRULED** the objection on both points. Target Telephone # 2 was in use by Abel Limas, who at the relevant period was a sitting judge. Any communications to which Limas was a participant would thus necessarily involve disclosure to a third party and could not under any circumstances be privileged. With respect to Target Telephone # 5, which was used by practicing attorney Jim Solis, the Gov-

ernment organized a taint team specifically to filter privileged conversations. The interception, moreover, was limited to only a thirty-day period. The Government has also provided Defendant with the grand jury record and the audio recordings of the intercepted communications that led to Defendant's Indictment. Defendant could not identify even one phone call that he claims was privileged and illegally disclosed. Accordingly, the Court was presented with no evidence that the Government disregarded the privileged nature or potentially privileged nature of the intercepted communications, and the Court overruled the objections.

Defendant also cited 18 U.S.C. § 2517(4) in support of his motion. Section 2517(4) states that "[n]o otherwise privileged wire, oral, or electronic communication intercepted in accordance with, or in violation of, the provisions of this chapter shall lose its privileged nature." 18 U.S.C. § 2517(4). The Court stressed at the hearing, and stresses again here, that should Defendant actually identify communications that he claims are privileged and thus cannot be introduced as evidence at trial, Defendant should raise the issue to the Court's attention and the Court will rule accordingly.

## E. Unauthorized Disclosure of Intercepted Communications

In his written motion, Defendant argued that the Government illegally disclosed in-

---

**2.** In addition, other courts have concluded that a probable cause showing is not necessary for every target interceptee. *See United States v. Little,* No. 11–189–01, 2012 WL 489194, at *3 (W.D.La. Feb. 14, 2012) ("There is no requirement for probable cause to be demonstrated as to every individual who is named as a target interceptee"); *United States v. Diaz,* No. 3:08–CR–267–D (05), 2009 WL 348284, at *5–6 (N.D.Tex. Feb. 11, 2009) ("[T]he relevant probable cause inquiry is not whether *Diaz* was engaged in criminal activi-

ty but whether *an individual* was engaged in criminal activity ... so long as the issuing judge determined that there was probable cause to believe [an individual] was engaged in drug trafficking and that the conversations sought to be monitored ... were likely to contain evidence of drug trafficking ... the interception of those telephones was properly authorized") (citing *United States v. Donovan,* 429 U.S. 413, 435, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977)).

tercepted communications by using the intercepted communications to secure an Indictment for alleged violations of 18 U.S.C. §§ 1341 and 1346 without proper court authorization. Defendant based his objection on 18 U.S.C. § 2517(5), which requires the Government, prior to disclosing to the grand jury intercepted communications or evidence derived therefrom, to file an application with the Court if the testimony relates to offenses other than those listed in the intercept applications. The statute provides that the application "shall be made as soon as practicable." *Id.* Disclosure will be authorized "where such judge finds on subsequent application that the contents were otherwise intercepted in accordance with the provisions of this chapter." *Id.* The statute also authorizes disclosure of intercepted communications and evidence derived therefrom for non-enumerated offenses "as provided in subsections (1) and (2) of this section." *Id.* Subsection 2 of Section 2517 further states that an investigative or law enforcement officer may use the contents of intercepted communications as "appropriate to the proper performance of his official duties." 18 U.S.C. § 2517(2).

The intercept applications for Target Telephone # 2 did not include 18 U.S.C. § 1341 as an enumerated offense until the tenth and eleventh extension applications and never included 18 U.S.C. § 1346. The intercept application for Target Telephone # 5 similarly listed 18 U.S.C. § 1341 but not 18 U.S.C. § 1346. The Government, however, sought and obtained the required order authorizing disclosure pursuant to 18 U.S.C. § 2517(5) in July 2010 [Doc. No. 211–2]. Defendant at the hearing conceded, with respect to the disclosure made to the grand jury that, given this order, the Government complied with the mandates of Title III.

■ Defendant claimed at the hearing, however, that the Government violated the pre-disclosure requirements by hiring private individuals to monitor the intercepted communications. The Court **OVERRULED** this objection. The Court does not believe that Title III requires each individual monitoring the intercepted communications to be a federal investigative agent. If Defendant has evidence that these individuals, working pursuant to a contract with the Government, were illegally disclosing the intercepted communications to the public, he may raise it to the Court's attention and the Court will entertain the motion. Without any evidence of such disclosure, however, the Court overruled the objection.

■ Defendant further expanded his objection in open court and claimed that the Government violated § 2517(5) by disclosing the contents of the wire intercepts or evidence derived therefrom to unindicted co-conspirators without court approval in order to extract guilty pleas from these individuals. The Government responded that these disclosures were appropriate pursuant to § 2517(2). For the purposes of this order, the Court need not decide whether this disclosure was improper. The Fifth Circuit has stated that the "primary purpose" of Section 2515, upon which Defendant bases his motion to suppress, "is apparently to exclude evidence derived from illegal, rather than legal, wiretaps. The section's main thrust is therefore to exclude evidence the seizure of which was in violation of the chapter, not evidence the disclosure of which was or would be in violation of the chapter." *Fleming v. United States*, 547 F.2d 872, 874 (5th Cir. 1977). The proper remedy for illegal disclosure of legally intercepted communications is therefore not suppression, but rather civil damages as provided by 18 U.S.C. § 2520. *See, e.g. United States v.*

*Cleveland,* 964 F.Supp. 1073, 1102–04 (E.D.La.1997) (collecting authority for proposition that civil suit is sole remedy for illegally disclosed but lawfully intercepted communications). Even if the Government's disclosure to unindicted co-conspirators was in violation of Section 2517, the Court may not order suppression on this basis and Defendant's motion is accordingly **DENIED.**

## F. Inventory Delay

Defendant claims that the Government violated Title III by not serving him with an inventory of the wire interceptions. Defendant bases his objection on Section 2518(8)(d), which mandates the Government to serve on named interceptees, as well as on any other parties to the intercepted communications that the judge in his discretion deems appropriate, an inventory detailing the fact that an intercept application was made, when the application was filed and whether the interception occurred. 18 U.S.C. § 2518(8)(d). The statute provides that the inventory must be served "within a reasonable time but not later than ninety days after ... the termination of the period of an order [approving an intercept application] or extensions thereof[.]" *Id.* The statute also provides, however, that "[o]n an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed." *Id.*

The final wire intercept in this case terminated on December 19, 2008, and the Government does not dispute that it has yet to serve Rosenthal with an inventory. [Doc. No. 209 at 30]. The Government has, however, filed numerous motions to delay the serving of an inventory based on the fact that the underlying investigation is still ongoing. This is obviously true from the public record as more individuals

continued to be indicted. Defendant argued in open court that the repeated delay of the serving of the inventory was unreasonable. The Government responded by directing the Court's attention to the Supreme Court's decision in *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 50 L.Ed.2d 652 (1977). *Donovan* addressed whether the Government's failure to provide discretionary notice pursuant to 18 U.S.C. § 2518(8)(d) mandated suppression of intercepted communications under 18 U.S.C. § 2518(10)(a)(i) as "unlawfully intercepted." *Id.* at 432, 97 S.Ct. 658. Suppression of the evidence, the *Donovan* court began, is not the remedy for every conceivable violation of Title III; rather, it is limited to a "failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of this extraordinary investigative device." *Id.* at 433–34, 97 S.Ct. 658 (internal quotation marks omitted). "[W]e do not think that postintercept notice was intended to serve as an independent restraint on resort to the wiretap procedure." *Id.* at 439, 97 S.Ct. 658. In reaching its conclusion, the court noted that it was not addressing "whether suppression would be an available remedy if the Government knowingly sought to prevent the District Court from serving inventory notice on particular parties." *Id.* at 439 n. 26, 97 S.Ct. 658. It additionally remarked that the defendants "were not prejudiced by their failure to receive postintercept notice ... the Government made available to all defendants the intercept orders, applications, and related papers." *Id.*

■ This Court recognizes the factual distinctions between *Donovan* and the case in question—particularly the fact that Rosenthal was a named interceptee for some

of the intercept applications and that the Government here *has* purposefully sought by motion to this Court to avoid serving inventory notice because of the ongoing nature of the investigation. Nevertheless, Defendant has not provided this Court with either: (1) law demonstrating that extensions on postintercept notice under these circumstances cannot legally be granted; or (2) any evidence that he has been harmed by the failure to receive the inventory notice. Following the hearing, moreover, the Court granted Defendant leave to file any supplemental motions or present evidence, which Defendant did not do. Accordingly, this Court finds that the extensions on inventory notice were properly sought and granted. Moreover, even if the extensions were not proper, Defendant has failed to prove any resulting prejudice. Defendant's motion to suppress the wire intercepts based on the Government's failure to provide inventory notice is **DENIED.**

**G. Other alleged violations**

Defendant in his written motion alleged additional Title III violations in support of suppression of the intercepted communications, which he did not raise during oral argument on December 18, 2012. These include the following claims: (1) that the extension intercept applications did not include an "end point" nor sufficiently explain why investigative objectives were not achieved during the prior interceptions, as required by 18 U.S.C. §§ 2518(1)(d) and (1)(f); (2) that the Government improperly delayed sealing the recorded intercepted communications, as dictated by 18 U.S.C. § 2518(8)(a); (3) that the Government failed to provide Rosenthal with the 10–day pre-disclosure notice before disclosing the recordings to the grand jury, as required by 18 U.S.C. § 2518(9)(2); and (4) a global objection to all intercept applications that the Government did not suffi-

ciently minimize the interception of non-pertinent calls, as instructed by 18 U.S.C. § 2518(5). First, Defendant has failed, both in his written motion and in open court, to put forth any evidence substantiating the claims delineated above. Second, Defendant has cited no law that mandates suppression based on these specific asserted violations. Lastly, Defendant has made no showing that he has been harmed by the Government's alleged failures to adhere to the above-cited statutory provisions. This Court has therefore been provided with nothing except for Defendant's vague allegations of Title III violations. Accordingly, Defendant's motion to suppress premised on the claims outlined above is **DENIED.**

## II. Request for Clarification of the Court's Ruling on October 26, 2012

Defendant during the hearing re-visited his objections and allegations of prosecutorial misconduct related to the Austin Web Works subpoenas on which this Court heard evidence and upon which this Court ruled on October 26, 2012. "[O]ut of an abundance of caution and due to the discrepancy in the subpoenas, the Court ruled that any information retrieved by these subpoenas was thereby **SUPPRESSED.**" [Doc. No. 201 at 2]. Defendant on December 18, 2012 again argued in open court that Austin Web' Works was not covered by the Stored Communications Act. The Court **OVERRULED** the objection once more. Defendant's argument regarding the scope of the Stored Communications Act is moot—the evidence has been suppressed. The Court will not re-litigate nor give advisory rulings regarding the issues resolved in October 2012. Accordingly, Defendant's objections were overruled.

## III. Motion to Change Venue

On October 26, 2012, the Court denied Rosenthal's Motion to Change Venue with-

out prejudice. Defendant re-asserted his motion in open court on December 18, 2012. The Court **GRANTED** the motion and **ORDERED** the trial to be held in the Corpus Christi Division of the Southern District of Texas.

In his previous written Motions to Transfer [Doc. Nos. 155, 157, 170 and 199], Defendant, citing this case under Rule 21 of the Federal Rules of Criminal Procedure [see Doc. No. 155 at 3], claimed that he could not get a fair trial in the Brownsville Division because of unfair and prejudicial pre-trial publicity. Rule 21 states in relevant part that "[u]pon the defendant's motion, the court must transfer the proceeding against that defendant to another district if the court is satisfied that so great a prejudice against the defendant exists in the transferring district that the defendant cannot obtain a fair and impartial trial there." Fed.R.Crim.P. 21(a). Defendant's initial motion asked this Court to transfer the case not to another District as contemplated by the rule, but to the Houston Division of this District. While not agreeing to the factual basis of this motion, the Government was willing to agree to the transfer if this Court would move it to Houston and travel with the case [see Doc. No. 197]. Due to the total lack of anything resembling evidence of prejudice, this Court denied the motion on October 26, 2012 without prejudice [Doc. No. 201 at 5–6].

Defendant renewed his motion on December 18, 2012 in open court during a discussion in which the Government claimed Defendant was generating publicity in the Brownsville and Houston Divisions in order to poison the jury pool. Defendant, after hearing the Government's position, renewed his motion to transfer. This time the Court granted Defendant's motion. It has not seen clear and convincing proof to support the supposition that

the Defendant could not get a fair trial in this Division, or, even considering the evidence proffered by the Government, that the Government could not get a fair trial in Brownsville. Nevertheless, given the support for a transfer indicated by both parties, this Court reluctantly granted Defendant's renewed motion. It ordered this case to be tried in the Corpus Christi Division, not the Houston Division.

■ This Court initially notes that Defendant's motion was incorrectly based upon Rule 21, the inter-district transfer rule, when he, in fact, was seeking an intra-district transfer that is more properly brought under Rule 18. *See United States v. Lipscomb*, 299 F.3d 303, 340 (5th Cir.2002) ("Rule 21 governs transfers to another district ... Rule 18, in contrast, governs intradistrict transfers[.]") Only Rule 21 transfers implicate the Constitution. *Id.* at 339. "It is clear that there is no constitutional right to trial within a division." 2 Charles Alan Wright et al., Federal Practice & Procedure § 305 (4th ed.) [hereinafter FPP]. *See also Lipscomb*, 299 F.3d at 339.

■ Pursuant to Rule 18, "[t]he court must set the place of trial within the district with due regard for the convenience of the defendant, any victim, and the witnesses, and the prompt administration of justice." Fed.R.Crim.P. 18. "Although the text of Rule 18 refers only to convenience and prompt administration, a district court may consider other factors." *Lipscomb*, 299 F.3d at 340. These factors "include, but are not necessarily limited to, docket management, courthouse space and security, and—most importantly for this case—pretrial publicity." *Id.* at 342.

If this Court needs to transfer this case to another division as suggested by Defendant, the Corpus Christi Division is the most convenient for this Court and for the

witnesses.[3] Most of the allegations involve factual scenarios that either occurred in the Brownsville or Corpus Christi Divisions. *See id.* at 340 n. 180 (noting that in *United States v. Gourley,* 168 F.3d 165 (5th Cir.1999), no abuse of discretion was found when division to which trial was moved was where elements of the offense had occurred). Thus, many of the witnesses are located there. Both sides have a Brownsville lawyer and a Houston lawyer—making Corpus Christi the halfway point for each. Defendant even has a Corpus Christi lawyer on his defense team. The only entity which will suffer a hardship will be this Court and its staff. This Judge is now the sole Article III Judge in the Brownsville Division, which has one of the highest caseloads in the country. Venue in Corpus Christi is the closest venue that allows this Court to continue the orderly administration of justice in Brownsville. From Corpus Christi, this Court can easily return from trial to Brownsville to manage the Court's docket there. *See id.* at 342 ("In the context of docket management, we have construed the term 'prompt administration of justice' to refer not just to the particular case that may be transferred, but also to other trials on the court's docket.") This is essential since this trial is forecasted to last a month. Other divisions located farther from Brownsville do not provide this access. This Court must be able to return to Brownsville weekly to assure the wheels of justice are still turning. Further, the transfer can be made to Corpus Christi

without the need for yet another continuance—all the existing deadlines and trial date may remain intact. In regards to pre-trial publicity, this transfer cures the problem (unfavorable pretrial prejudice) about which Defendant speculated.[4] Assurances have been made to the undersigned that a courtroom will be made available. Consequently, a transfer to Corpus Christi protects Rosenthal from the alleged prejudicial aspects he fears in the Brownsville District, while literally facilitating all other relevant factors. *See Lipscomb,* 299 F.3d at 337–349; 2 FPP § 305.

For the above stated reasons, this Court **ORDERED** trial to be held in the Corpus Christi Division of the Southern District of Texas. All current pending deadlines and trial dates remain intact.

---

3. Once both parties agree that a case should be transferred, they cannot dictate the division to which it is moved. The rule clearly vests the discretion in setting the place of trial within the trial court.

4. The primary reason for the request for transfer by Rosenthal was the publicity allegedly generated by the local daily newspaper, The Brownsville Herald. The Herald's parent company is Freedom Newspapers, an entity

Rosenthal has sued [*see* Doc. Nos. 157, 170 & 199]. Freedom Newspapers also owns the McAllen Monitor. Hence, the same problem, if it indeed exists, is present in the McAllen Division as is allegedly present in the Brownsville Division—which makes the Corpus Christi Division the next closest geographic division. Its main newspaper is not owned by Freedom Newspapers.